Superior Courts have at all times been very cautious of extending their jurisdiction or exercising powers never before practised even in cases where the right seems to be acknowledged. Littleton, in his chapter on knight service, says, no action can be brought on the. statute of Merton for disparaging an heir, because none ever had been brought. Brooke says, that a writ of error will run to the five ports; but in Dyer, 376. because none ever had gone, it was determined that none ever should go. In Year Book, 39 Hen. VI. a royal protection to the king’s proctor at Rome was disallowed, because none roas ever granted before. See 1 Bl. Rep. in the case of Tonson & Collins, 309. 2 Stra. 881. the Court re *167 fused a mandamus to the Justices to grant a license, because no such had ever issued in süch case.
At common law, by the statute of 4 Hen. I. c. 18. Stat 3 James I. c. 7. and by an act of assembly of the year 1715, c. 48. s. 12. powers are given to the Justices to admit such as they in their discretion shall think of sufficient .knowledge and probity ; and that none else should he admitted by the above statute of James.
Thus have the several Courts of Law been empowered to judge of the knowledge and probity of the persons applying for admission in their Courts, as it is fit they should, of their own officers ; and where an admission has once been obtained, no superior Court has ever exercised the power, by certiorari or otherwise, of inquiring into the propriety of the admission. Was not the want of knowledge and probity sufficient to exclude from admission by the statute? Yet as the Justices were vested with the power of determining who were properly qualified, no other power has ever interfered.
This Court has a superintending power over criminal matters generally, and in some special cases, over im ferior jurisdictions for particular purposes ; that is, to see that they do not exceed their jurisdiction; to rectify errors in the proceedings; to punish such as act corruptly, unjustly and oppressively; to grant mandamus where persons have been illegally put, or kept out of office ; as well as to prohibit the further proceedings of such as have no jurisdiction. Should the County Courts exceed their hounds, a certiorari may be brought, not to try the merits of the question, hut to see if they have exceeded their jurisdiction. See 2 Burr. 1042. Rex v. Morley, on a conviction under the conventicle act, 22 Car. II. s. 1.
In April sessions, 1783, c. 17. an act was made concerning the qualification and admission of solicitors and attorneys, which vested a discretionary power in the *168 Justices of the respective Courts after examination, by such ways and means as to them respectively shall seem proper, whether such person is suitable and fit with respect to his knowledge, abilities and integrity, and whether, on consideration of all circumstances, and the whole conduct and behaviour of such a person, he is well affected to the present government of this state, and the principles of liberty and independence as established by the revolution : and if satisfied that such person is duly qualified, to- administer the oaths directed by law, and cause him to be admitted.”
Thus is a power vested in the respective Courts, on inquiry and consideration of all circumstances, and the whole, conduct of the person, to admit him to practise as an attorney; which law, by going n« further in case of an admission, seems to be final, (the appeal being only-given in case of a refusal.) Had the legislature intended to have had a further inquiry after admission, the law would have given the same. No such power is any where - given, none such have ever been exercised by any superior Court whatever.
The power given by the law is discretionary ; which¿ according to Lord Mansfield, can mean nothing else but .the exercising their judgments upon the occasion that calls for it. Nor are they obliged to give any reasons for their determination. They have a right to judge for themselves, nor can this Court exercise any power or claim to review the reasons upon which the Court below forms its judgment in such cases, or overrule the discretion entrusted to them. If they act corruptly, partially or maliciously, they may he indicted. 1 Burr. 556. 1 Salk. 45. 2 Stra. 881. 1 Burr. 570. 246.
Second point. Should the Court, notwithstanding, be of opinion, that a certiorari will lie in the present case, • the next inquiry is, have the justices exceeded their jurisdiction, or acted illegally ? The first will hardly *169 be disputed, and therefore the latter comes into consideration. The knowledge and integrity of Mr. Johnston are acknowledged on the face of the record; these, as well as his political principles, the Court have determined ; so that, unless he is absolutely excluded by some law existing at the time, the justices have done no more than a just regard to the rights of mankind required.
It is a rule in law, that penal statutes should he construed strictly, and surely such as deprive any person of the means of getting a livelihood for themselves and family by their honest industry, in the only way they know, must be penal indeed.
The act for the better security of government, October sessions, 1777, c. 20. required all free male persons within this state above eighteen years of age, to take the oath of fidelity and support to the state, by the first of March following, or be disabled to practise the law, &c. Mr. Johnston not then being an inhabitant, neither falls within the letter or meaning of this law.
In May sessions, 1781, an act of assembly was made, c. 20. to prevent disaffected emigrants from settling in this state, &e. whereby it was enacted, that no citizen or inhabitant of any of the United States, who had not taken the oath of allegiance to the state in which he resided, should ever hereafter come to this state ; and in case that he should, he may be apprehended by warrant from any justice of the peace, lieutenant, or militia field officer of any county, and carried before the governor and council, who may order such person to depart within a limited time, &c. or commit him to gaol, &c.
And that every person above eighteen years of age, who hath already come into, and remains in this state, from any of the United Slates, shall, on or before the first day oí September next, appear be fore some justice of *170 the peace for the county in which he may reside, and take and subscribe the oath or affirmation of fidelity and support to this state, as prescribed by the act to punish certain crimes and misdemeanors, and to prevent the growth of toryism, and if any person shall neglect so to do, or shall, on the said oath or affirmation being tendered to him by any justice of the peace for such county, (which oath or affirmation any justice of the peace may at any time tender,) refuse to take and subscribe the said oath or affirmation, such person so neglecting or refusing shall be considered as a subject of the state from which he came, and may be dealt with as if he had come into this state after the passing of this act.
It is remarkable, that this law, when in force, left it discretionary in the justice, county lieutenant or field officer, to have the person apprehended or not; and also for the governor and council to order the person out of the state or not, according as the person appeared to be inoffensive or otherwise. But this law also having .expired with the war, was not in force when Mr. Johnston was admitted; but is at the same time the strongest proof of Mr. Johnstorts unblemished conduct when he was so well known to the persons who were empowered to execute the same. He remained an inhabitant of this state unmolested. He owed it a local allegiance, which he strictly observed, and since the expiration of that law is become a subject of it, as he was near three years before the same was enacted.
After peace was concluded, the law now in force was made, whereby all former disqualifications seem impliedly to be removed, but such as are contained in this law. The justices are vested with a power to determine, on inquiry and consideration of all circumstances, and the whole conduct of the person, to admit. Their power is discretionary so far, and no appeal from their determination but in case of refusal, &c. because there is *171 •■39 power given by the lazv to examine the merits or qualifications of the person elsewhere, nor to inquire into the reasons of the admission. The justices, on the return of the certiorari, have not assigned any reasons, nor are they obliged by law to do so.
Upon the whole, the several Courts have, time out of mind, exercised the power of determining who were qualified to be attorneys of their respective Courts. The several statutes and acts of assembly confirm the «ame. The act of 1783, particularly, gives them a discretionary power to determine of the knowledge, abilities and integrity, as well as the political principles of the person to be admitted, and that not on one or two facts, but on the consideration of all circumstances, and the •whole conduct and behaviour of the person. And as no power appears by the law to he vested in this Court to countervail such admission, as no power has ever been exercised, or no certiorari has ever been issued iu such eases, and as no law now exists to disqualify Mr. Johnston from practising, and the justices, upon full information, have determined that he is qualified to be admitted agreeably to the act of assembly, and have admitted him accordingly, I hope the Court will, in this case, discourage such an unwarrantable proceeding, by quashing the certiorari issued, and put an end to an affair, which seems to have taken its rise from a busy intermeddling spirit, and carried on, not with a regard to the public good, nor called thereto by the duty of public office.
At this term the case was struck orr-.