URIEL H. CROCKER, administrator, vs. OLD COLONY RAILROAD COMPANY.

Suffolk.   Jan. 24. — July 3, 1884.   DEVENS & C. ALLEN, JJ., absent. COLBURN, J., did not sit.

An executor, whose power to dispose of the estate of his testator was not limited by the will, fraudulently transferred a certificate of stock in a corporation, standing in the name of the testator, to a bank, "as collateral for the note of A.," who was a son of the testator, but to whom the estate was not indebted. The note, signed by A., gave the bank a power to sell the stock in case of a default, and provided that the proceeds, after paying the debt, should be paid to A. The transfer was taken to the corporation, and, after ascertaining that the executor was duly appointed, and that A. was an heir of the testator, it recorded the transfer, and issued a new certificate to the bank, "as collateral for the note of A." The note of A. not being paid, the bank sold the stock by auction, and, on payment of its debt, transferred the certificate to A., who assigned it to the auctioneer, who in turn assigned it to the purchaser. The balance of the proceeds was paid to A.; and the corporation, on presentation of the former certificate and the transfers, issued a new certificate to the purchaser. *Held,* on a bill in equity, by the administrator *de bonis non* with the will annexed of the estate of the testator, against the corporation, to compel it to issue a new certificate for the benefit of the estate, that these facts did not show any negligence on the defendant's part in issuing either the certificate to the bank or that to the purchaser at the sale by auction; and that the bill could not be maintained.

MORTON, C. J.   The plaintiff brings this bill in equity as the administrator *de bonis non* with the will annexed of the estate of James Dillon, having succeeded one Rand, who was the original executor appointed by the will.   The bill alleges, in substance, that Rand, as such executor, owned twenty shares of the capital stock of the defendant corporation; that he fraudu-, lently transferred them to the Suffolk National Bank as security for a note of James Dillon, Jr.; that the defendant, knowing the fraud, negligently and wrongfully recorded the transfer, and issued a new certificate to the bank; that, upon the payment of the note, the bank transferred them to James Dillon, Jr.; and that the defendant negligently and wrongfully recorded such transfer and issued a new certificate, whereby the stock has been lost to the estate.

The case was referred to a master, by whose report it appears that the estate of James Dillon was the owner of twenty shares of stock, as alleged, and that Rand was the executor of the will, duly appointed and qualified in June, 1872.   On May 25, 1876, he transferred " to the Suffolk National Bank of Boston, as collateral for note of James Dillon, twenty shares of the capital stock of the Old Colony and Newport Railway Company, subject to the provisions of the charter and to the by-laws of the company."   The proper officers of the defendant thereupon issued a new certificate to " the Suffolk National Bank, as collateral for note of James Dillon of Boston."   The transfer by Rand to Dillon, or for his use, was a fraud upon the estate, but there is no evidence that the defendant or any of its officers had knowledge of the fraud.   We need not discuss what might have been the duty of the defendant if its officers had knowledge of an intended wrongful application of the stock or its proceeds by the executor.

We see no principle upon which it can be held that, by merely recording the transfer and issuing a new certificate in accordance with it, the defendant is guilty of negligence which renders it liable to the estate for the stock, or its value, in any form of action.   When a transfer of its stock is presented to a corporation, it is bound at its peril to see that it is a genuine transfer by one who has the power of disposition over the stock.   *Sewall* v. *Boston Water Power Co.* 4 Allen, 277.   *Atkinson* v. *Atkinson,*

8 Allen, 15. *Merriam* v. *Boston, Clinton & Fitchburg Railroad,* 117 Mass. 241. *Pratt* v. *Taunton Copper Co.* 123 Mass. 110. If it issues a new certificate upon a forged or an unauthorized transfer, the real owner retains his property in the stock, and the corporation may also be liable to a *bona fide* holder of the new certificate. But when a transfer by one who has the full power to transfer is presented, the corporation has the right to act upon it, and it is not its duty to inquire into the purposes of the parties, or to investigate the question whether the transaction is in good faith or is fraudulent.

Rand, as executor, had the full power of disposing of this stock; there is nothing in the will restricting his general authority as executor as to it; he had the power and right to sell it, or to pledge it for the purposes of the estate. The defendant took care to inform itself of the authority of Rand, and knew of the relation, as heir and legatee, which Dillon sustained towards the estate. We do not think it was bound to go further, and to ascertain, at its peril, whether the transaction between Rand and Dillon was in fraud of the estate. *Hutchins* v. *State Bank,* 12 Met. 421. It had no means of making such an investigation.

This case furnishes a strong illustration of the impracticability of requiring a corporation to make such investigation, since it could only be ascertained by the examination and adjustment of long and complicated accounts between Rand and Dillon, running over many years, that the transfer for the use of Dillon was wrongful. It is to be borne in mind that the defendant does not stand in the position of a purchaser of the stock, as to whom possibly different considerations might apply. *Shaw* v. *Spencer,* 100 Mass. 382. If a proper transfer is presented to a corporation, it is its duty to issue a new certificate in accordance with it; and, if it refuses, it is liable to the person to whom the transfer is made. *Bond* v. *Mount Hope Iron Co.* 99 Mass. 505.

When the Suffolk National Bank presented this transfer executed by one who had full power to dispose of the stock, it was not required of the defendant to enter into a controversy with the bank as to its right to the stock. The defendant had the right, and probably it was its duty, which the bank could compel

it to perform, to record the transfer and issue a new certificate in accordance with it. As we have before stated, upon the facts as found by the master in regard to this transaction, we are of opinion that the plaintiff has not shown any negligence of the defendant which makes it liable to him.

The plaintiff contends that, if the defendant was not negligent in issuing the certificate to the bank, it was negligent in issuing a new certificate to Torrey, the purchaser, at a sale made by the bank, and therefore is liable for the surplus of the value of the stock after deducting the amount of the note of Dillon to the bank.

It appears by the report, that, at the time of the transfer of the stock by Rand to the bank, Dillon gave his note to the bank, of which the following is a copy: " Boston, May 25, 1876. Thirty days after date, for value received, I promise to pay to the Suffolk National Bank or order, at its place of business in Boston, fifteen hundred dollars, having deposited herewith as collateral security, on which the present margin shall be maintained, twenty shares Old Colony and Newport Railway, with authority to sell the same without notice, either at public or private sale, or otherwise, at the option of the said Suffolk National Bank, on the non-performance of this promise; said bank giving me credit for any balance of the net proceeds of such sale remaining after paying all sums due from me to the aforesaid bank."

It is not directly found by the master, but the only fair inference is that Rand knew of the form of this note and was a party to the transaction. The note was not paid at its maturity, and in February, 1877, an arrangement was made between the parties by which the stock was sold by auction. Upon receiving its debt, the bank assigned the stock to Dillon, who assigned it to the auctioneer, who in turn assigned it to Torrey, the purchaser at the auction sale. These assignments were presented to the defendant; it recorded them, and thereupon issued a certificate to Torrey, who now holds the stock.

The transfer by Rand and the note were parts of one transaction. By it, Rand held out Dillon, both to the bank and to the defendant, as the pledgor of the stock, and authorized the bank, if the note was not paid at its maturity, to sell the stock,

and, after reimbursing itself, to account with Dillon for the balance. The purpose of the parties seems to have been to accomplish by one step the same result which would be reached by a transfer to Dillon and then a transfer in pledge by Dillon to the bank, and to authorize the bank to treat Dillon as pledgor in the same way as if the transfer had been directly from him.

Upon these facts, the defendant was guilty of no negligence in issuing the certificate to Torrey. It does not appear what inquiry was made by the defendant when called upon to issue this certificate. But this is immaterial. Inquiry would have revealed the facts to be that Torrey had bought the stock at an auction sale, made or caused to be made by the bank as pledgee under a contract which gave it power to make such sale. It is difficult to see why Torrey, by the transfer from the bank through Dillon, did not get a perfect title to the stock, or to discover any ground upon which the defendant could refuse to perform the duty imposed upon it by statute, of recording his transfers and issuing to him a new certificate.

We are of opinion, upon the whole case, that the defendant is not liable to the plaintiff in any form of action.

*Bill dismissed.*

*H. W. Chaplin,* for the plaintiff.
*J. H. Benton, Jr.,* for the defendant.