## TAFFT v. PRESIDIO AND FERRIES RAILWAY COMPANY.*

### No. 11,988; October 30, 1889.

22 Pac. 485.

Corporate Stock—Transfer—Conversion.—If the Attorney in Fact of a stockholder presents the certificate of stock, together with a power of attorney from the stockholder giving him full authority to deal with the stock, and the corporation's officers are ignorant of any intention on the part of the attorney to misappropriate the stock,

*For subsequent opinion in bank, see 84 Cal. 131, 18 Am. St. Rep. 166, 11 L. R. A. 125, 24 Pac. 436.

the corporation will not be guilty of conversion simply by issuing another certificate in the name of the attorney, who appropriates the stock wrongfully.[1]

Corporate Stock—Transfer—Conversion.—The Fact That the Attorney was also a director of the corporation does not warrant the presumption that the corporation had notice of his intention to convert the stock to his own use, as he assumed to act, not for the corporation, but for his principal.

Corporate Stock—Transfer—Conversion.—The Lack of the Owner's Indorsement on the certificate was not inconsistent with the right of the attorney to cause the stock to be transferred to himself.

Corporate Stock—Transfer—Conversion.—The Neglect of the Officers to require an indorsement of the certificate is only nonfeasance, and is no evidence of conversion.

Corporate Stock—Transfer—Conversion.—It is not the Duty of the Officers of a corporation to inquire into the motives of an attorney in fact, having full power to transfer stock, for desiring it to be transferred to himself.[2]

APPEAL from Superior Court, City and County of San Francisco; T. H. Rearden, Judge.

Action by Adelia A. Tafft against the Presidio and Ferries Railroad Company, a corporation, for the conversion of stock, the property of plaintiff. Judgment for plaintiff, and defendant appeals.

Jarboe, Harrison & Goodfellow and Lloyd & Wood for appellant; Wilson & Wilson for respondent.

VANCLIEF, C.—On the twenty-third day of October, 1874, the plaintiff executed to Arthur W. Bowman a power of attorney authorizing him to transact her business generally and particularly; "to invest all and singular such sums of money as may be in his hands belonging to me, in such securities and upon such terms as he may think fit and for my interest; to sell, dispose of, transfer, and deliver all

---

[1] Cited in the note in 136 Am. St. Rep. 1030, on the duty of corporations to transfer stock on their books.

[2] Cited with approval in Mundt v. Commercial Nat. Bank, 35 Utah, 95, 136 Am. St. Rep. 1023, 99 Pac. 456, holding in effect that the corporation has nothing to do with the motives actuating the parties to the transfer, or with the consideration for it, unless upon notice given it, indifference to which must entail responsibility.

or any of my interests in the capital stock of any association, bodies corporate or politic, and to represent me and vote for me at any and all meeting or meetings of stockholders of any and all corporations in which I now or may hereafter hold or own shares of capital stock; and to represent me and my shares of stock aforesaid in all matters and things touching the said shares, and the acts and doings of the said corporations; also to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with, goods, wares, and merchandise, choses in action, and other property in possession or in action; and to make, do, and transact all and every kind of business, of whatever nature and kind soever; . . . . giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present." This power of attorney continued in force until October 18, 1884, when it was revoked. On and prior to the twenty-third day of May, 1882, the plaintiff was the owner of two hundred shares of the capital stock of the defendant corporation, which stood in her name on the books of the corporation, and for which a certificate, numbered 31, had been issued to her. The defendant corporation was organized under the laws of the state for profit. Its by-laws, regulating transfers of stock, so far as relevant to this case, are as follows:

"Sec. 2. Every transfer of stock, or of the certificates above provided to be issued, shall be entered in the transfer books, to be kept by the secretary, by an entry showing to and by whom transferred, the numbers and designations of the shares, and the date of the transfer, and duly attested by the secretary. No transfer shall be valid except as between the parties, unless made as in this section provided.

"Sec. 3. The stock shall be transferable as in the last preceding section specified, and upon the books of the corporation, upon proper assignment and delivery to the assignee of the certificates above provided for. . . . .

"Sec. 4. The surrendered certificates shall in all cases be canceled by the secretary before issuing a new one in lieu thereof."

On the nineteenth day of August, 1882, A. W. Bowman presented to the secretary of defendant the certificate of stock No. 31, issued to the plaintiff as aforesaid, but not indorsed by her, or by any other person for her; and at the same time presented to the secretary said power of attorney from the plaintiff, and demanded a transfer to himself, in his own name, of the two hundred shares of stock represented by certificate No. 31, then standing in her name on the books of the company. The secretary then received from Bowman the certificate No. 31 without indorsement, canceled it, made the transfer on the books as requested, and, in lieu of certificate No. 31, issued to Bowman in his own name two certificates, for one hundred shares each, numbered, respectively, 211 and 212. At the time of this transaction the plaintiff was absent from this state, and actually knew nothing of it, and had authorized it in no other way than by said power of attorney.

On said nineteenth day of August, 1882, Bowman was largely indebted to divers persons in this state, and was then, and ever since has been, insolvent. Thereafter, for a valuable consideration, Bowman assigned and transferred said certificates, numbered 211 and 212, to the California Safe Deposit and Trust Company, a corporation, which took the assignment and transfer thereof in good faith, without notice of the rights of the plaintiff. Plaintiff had no notice of this transfer and assignment of certificates Nos. 211 and 212 until after they were made, and did not authorize the same, otherwise than by said power of attorney. Bowman was a director of the defendant corporation from January, 1882, until October, 1884. The defendant corporation never had any actual or presumptive notice that Bowman procured the transfer of said stock to himself for his own use, or that he intended to convert it to his own use, or to use it in any way prejudicial to the rights of the plaintiff, unless such notice may be presumed from the fact that he was one of the directors of the defendant corporation, as above stated. This action was brought by the plaintiff to recover from the defendant damages for an alleged conversion of said two hundred shares of stock; and the court found: "Eighth, that said defendant did, prior to the commencement of this action, convert and appropriate the said two hundred shares of stock of the de-

fendant, so belonging to plaintiff, and has wholly refused to return the same, or any part thereof, to plaintiff; and that, at the time of such conversion, the same was of the value of $10,000.'' Judgment was accordingly rendered in favor of plaintiff for $10,000 and costs. Defendant moved for a new trial, on the ground, among others, of insufficiency of the evidence to justify the decision. From the order denying a new trial, and also from the judgment, the defendant appeals.

Whether or not the evidence justifies the finding that the defendant converted the stock, as expressed in the eighth finding above set out, is the principal question to be decided. If that finding is justified by the evidence, the judgment and order should be affirmed; otherwise a new trial should be granted. After a careful examination of the evidence I am of the opinion that it does not warrant the finding that defendant individually, or jointly with Bowman, converted the stock in question. There is no evidence bearing upon this issue except the facts and circumstances above stated, which, I think, neither constitute nor substantially tend to prove a conversion by the defendant.

1. The defendant never took or had possession of the stock, or of the certificate which represented the stock, in any other way or sense than it took and had possession of all stock which it transferred upon the corporation books at request of a party to the transfer.

2. The defendant neither exercised, nor assumed to exercise, any dominion or control over the stock or the certificate; but simply recorded the transfer, canceled the old certificate (No. 31) and issued new certificates, as requested by Bowman.

3. The defendant corporation had no notice that Bowman intended to convert the stock, or to use it otherwise than as authorized by the plaintiff. Under the circumstances of this case, the fact that Bowman was one of the directors of the defendant corporation at the time of the transfer of the stock to him does not warrant the presumption that the corporation had notice of his intention to convert the stock to his own use. A director of a corporation is not disqualified to deal in its stock on his private individual account, or as agent for others. And when, in the course of such dealing, he requests a transfer of stock on the corporation books, notice of

his motives and intention in regard to such transfer is not
to be imputed to the corporation, unless he also acts, or
assumes to act, for the corporation in the same transaction:
Morawetz on Private Corporations, secs. 527, 540b, 540c;
Bank v. Whitehead, 10 Watts (Pa.), 397, 36 Am. Dec. 186,
and authorities there cited in note; First Nat. Bank v. Gif-
ford, 47 Iowa, 581; Blen v. Mining Co., 20 Cal. 614, 81 Am.
Dec. 132; Lothian v. Wood, 55 Cal. 161. Bowman did not
act for, or assume to represent, the corporation in the matter
of transferring plaintiff's stock, wherein it appears that the
corporation was represented by its appropriate officers for
that purpose—its secretary and president—to whom Bow-
man exhibited plenary authority to represent the plaintiff.

4. That the certificate (No. 31) was not indorsed by plain-
tiff was not inconsistent with the right of Bowman to have
the stock transferred to himself. His possession of the cer-
tificate, with a power of attorney from plaintiff authorizing
him to transfer the stock, was prima facie evidence that he
was at least the equitable owner: Ang. & A. Corp., sec. 564;
Low. Tr. Stocks, secs. 43, 44; Colt v. Ives, 31 Conn. 25, 81
Am. Dec. 161; Boatmen's Ins. & Trust Co. v. Able, 48 Mo.
136; Broadway Bank v. McElrath, 13 N. J. Eq. 26; Scripture
v. Soapstone Co., 50 N. H. 571; Baldwin v. Canfield, 26 Minn.
43, 1 N. W. 261, 276; State Bank v. Cox, 11 Rich. Eq. (S. C.)
347, 78 Am. Dec. 458.

5. The neglect of the secretary and president to require
an indorsement of the certificate before transferring the stock
does not tend to prove that defendant converted the stock, or
aided Bowman's conversion of it. Section 1 of the by-laws
provides that "such certificates shall be transferable by in-
dorsement and assignment," and that "no transfer shall be
valid, except as between the parties, unless made as in this
section provided." We have seen that delivery of the cer-
tificate, with written authority to transfer the stock, is evi-
dence of an equitable assignment, no written assignment by
indorsement or otherwise being necessary. Besides, it was
enough to justify the transfer that the assignment appeared
to be valid between the parties thereto. This satisfies the
by-law requirement of an assignment, in the absence of notice
to the corporation that an assignment was not intended. The
by-law requirement that the certificate should be indorsed

was for the benefit of the corporation, and was waived by the neglect of the corporation to demand or request it: Black v. Zacharie, 3 How. (U. S.) 513, 11 L. Ed. 690; National Bank v. Bank, 105 U. S. 217, 26 L. Ed. 1039; Isham v. Buckingham, 49 N. Y. 222. If, however, the plaintiff had any right of protection by this by-law, I see no reason why her action, through Bowman, whom she had authorized to transfer the stock, did not amount to a waiver of the indorsement by her. Had she appeared in person, and procured the transfer without indorsing the certificate, it would seem clear that she thereby waived the indorsement. Was not Bowman authorized to do all that she could have done in that behalf if personally present? But, however this may be, the mere neglect of the defendant to demand or procure the indorsement of the certificate was only nonfeasance, which of itself has never been admitted as evidence of conversion: 2 Greenl. Ev., sec. 642, and note. In this connection it should be observed that the gravamen of this action is conversion, and that negligence is neither alleged nor found: Doyle v. Callaghan, 67 Cal. 154, 7 Pac. 418.

6. It is true that defendant had notice of Bowman's relation to plaintiff as her agent, and also of his authority as such agent, so far as it appeared by the power of attorney. But such notice did not devolve upon the defendant the duty to seek, or inquire beyond what thus appeared, for the motives or intentions of Bowman, for the purpose of protecting the plaintiff from possible fraud or bad faith of her chosen and trusted agent, since it does not appear that defendant had any means of discovering Bowman's motives or intentions, other than to have inquired of him directly whether or not he intended, by the transfer, to defraud the plaintiff, which would have been, not only impertinent, but probably futile. The defendant was not a party to the transfer. Its function was simply ministerial, and its actions solely dependent upon the ostensible authority of Bowman to demand the transfer: Cook, Stocks, sec. 386; Helm v. Swiggett, 12 Ind. 195; Crocker v. Railroad Co., 137 Mass. 417; Brewster v. Sime, 42 Cal. 143. In Crocker v. Railroad Co., 137 Mass. 417, an executor had induced a corporation to transfer stock which belonged to the estate, and stood in the name of his testator, in fraud of the estate, by which the estate lost it, the corpora-

tion having notice of the representative character of the executor. The object of the action was to make the corporation responsible for negligence in transferring the stock under these circumstances. The court, by Morton, C. J., said: "If it [the corporation] issues a new certificate upon a forged or an unauthorized transfer, the real owner retains his property in the stock, and the corporation may also be liable to a bona fide holder of the new certificate. But, when a transfer by one who has the full power to transfer is presented, the corporation has the right to act upon it, and it is not its duty to inquire into the purposes of the parties, or to investigate the question whether the transaction is in good faith or is fraudulent." In Field v. Schieffelin, 7 Johns. Ch. (N. Y.) 150, the headnote correctly expressed the substance of the decision of the chancellor, as follows: "A guardian having the legal power to sell or dispose of the personal estate of his ward in any manner he may think most conducive to the purposes of his trust, a purchaser who deals fairly has a right to presume that he acts for the benefit of his ward, and is not bound to inquire into the state of the trust; nor is he responsible for the faithful application of the money, unless he knew, or had sufficient information, at the time, that the guardian contemplated a breach of trust, and intended to misapply the money, or was in fact, by the very transaction, applying it to his own private purpose": See, also, Albert v. Bank, 2 Md. 169; Hutchins v. Bank. 12 Met. (Mass.) 421; Ashton v. Bank, 3 Allen (Mass.), 222. In State Bank v. Cox, 11 Rich. Eq. (S. C.) 344, 78 Am. Dec. 458, it appears that Madam S., being the owner of fifty shares of stock in South Carolina State Bank registered in her name, and of which she held the certificate, delivered the certificate, without indorsement, to B., and at the same time executed to B. a power of attorney, authorizing him to transfer the stock. B. assigned the stock to Cox, and used the proceeds for his own purposes. Cox applied to the bank to have the stock transferred to him on the books of the bank, which was opposed by S. on the grounds that she had not indorsed the certificate; that B. had committed a breach of trust in assigning it, and converting the proceeds to his own use; and that B. was totally insolvent. The bank interpleaded the parties. Upon these facts, substantially, the chancellor decreed that the bank

transfer the stock to Cox, and in doing so said: "Whatever may have been the motive for the delivery of the certificate of stock and the power of attorney to B., she (S.) invested him (B.) thereby with all the indicia of property and ownership as to said shares of stock, and, if he abused her confidence, she must bear the consequences. [Page 349.] . . . . The evidence is plenary that, according to commercial usage, this possession of the certificate and a power of attorney in this form imported ownership. [Page 350.]" The court of appeals, in affirming this decree, said: "B. had been put in possession of this scrip, with an indefinite power of disposition, by S., and, if he was not the owner (of which ownership there is much evidence), she exhibited him in a light which enabled him to lay claim to the stock. Under such circumstances, equity would not permit her to avail herself of the dry skeleton of title, which yet stands formally in her name, to defeat him whom she has contributed to deceive. The transfer should have been formally made; and this court will not take notice of that as undone which ought to have been done": Id., p. 391.

If, according to the authorities above cited, the defendant may have looked upon Bowman as the equitable owner of the stock, by reason of his possession of the certificate, and his power to transfer the stock, it would follow that defendant had notice that, while Bowman was the authorized agent of the plaintiff to sell and transfer her stock, he had purchased the stock in question from his principal, as he unquestionably had a right to do, provided that he dealt with her fairly and honestly (Civ. Code, sec. 2230; Rubidoex v. Parks, 48 Cal. 215; Blockley v. Fowler, 21 Cal. 329, 82 Am. Dec. 747; Golson v. Dunlap, 73 Cal. 157, 14 Pac. 576); and it was not the duty of the defendant to inquire whether or not he had defrauded, or intended to defraud, his principal, that being a matter in which the principal and agent alone were interested. It did not concern third persons having no interest in the matter of the assignment or transfer of the stock; and such was the relation of the defendant to the transaction. On the presumption that the defendant knew the law applicable to the transaction, it can only be charged with notice that plaintiff could avoid the assignment as against Bowman, unless he

could prove that it was perfectly fair and honest; but such notice did not impose upon the defendant a duty to intervene between the parties, and object to the transfer, which, for aught that appears, may have been perfectly fair and honest. If this view of the transaction is correct, it follows that the defendant had no notice that Bowman, as agent for the plaintiff, assigned her stock to himself without her consent; and it is therefore unnecessary to decide what effect such notice, if given, would have had. "It is, however, of no consequence," says an author, "that the title of the purchaser is voidable, if it has not been, in fact, avoided; because, by the definition of the term 'voidable,' the title of the purchaser, in such a case, is valid until it is avoided": Low. Tr. Stocks, sec. 138.

I do not understand that it is contended by the learned counsel for respondent that the defendant converted plaintiff's stock otherwise than by aiding or assisting Bowman to convert it to his use alone; for it is not pretended that the defendant had or sought any use, profit, or advantage by the conversion; nor, as before remarked, does the evidence tend to prove that defendant had actual or constructive notice of Bowman's conversion, or of his intention to convert; and the only act by which it can be claimed that defendant, even unconsciously, aided or assisted Bowman to convert the stock, was the act of transferring it on the books of the company at Bowman's request; which request was ostensibly authorized by the plaintiff. I have found no authority for a constructive conversion upon facts similar to the facts of this case. Perhaps Dodge v. Meyer, 61 Cal. 405, may be regarded as furnishing a pattern of a cause of action for constructive conversion, with little, if anything, to spare. In that case, however, the defendant, Meyer, had actual notice of the intention to convert, and intentionally aided and assisted in the conversion for his own benefit. I think the plaintiff was the victim of her own trusted agent alone, and that the judgment and order should be reversed, and a new trial granted.

We concur: Belcher, C. C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed and a new trial granted.