A. BARR COMSTOCK, administrator *de bonis non* with the will annexed, *vs.* SHERMAN H. BOWLES & others.

SHERMAN H. BOWLES *vs.* A. BARR COMSTOCK, administrator *de bonis non* with the will annexed.

DONALD M. MACAULAY, trustee, *vs.* SAME.

A. BARR COMSTOCK, administrator *de bonis non* with the will annexed, *vs.* DONALD M. MACAULAY, trustee.

Hampden. September 19, 1935. — September 9, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Probate Court*, Appeal, Accounts, Jurisdiction. *Executor and Administrator*, Removal, Sale of personalty, Expenses of administration, Accounts, Distribution. *Sale*, Validity, Rescission.

An administrator rightly was removed as "unsuitable" under G. L. (Ter. Ed.) c. 195, § 11, on evidence that he had sold corporate stock of the estate to obtain a plaintiff to bring litigation against the corporation, which would be a direct or indirect personal advantage to him inconsistent with his fiduciary duty in that in such litigation he personally would be counsel and receive fees; and that he was biased and so had administered the estate as to benefit one beneficiary for whom he personally was counsel to the disadvantage of another beneficiary against whom he had conducted extended litigation on behalf of his client.

An administrator *de bonis non* was a party aggrieved by and entitled to appeal from a decree of the Probate Court allowing the account of his predecessor as administrator.

The expense of printing and other expenses of an appeal by an administrator from a decree of a probate court were properly disallowed in his account where it was obvious that the appeal would be futile as presenting no question of law to this court because he had neither requested a report of material facts nor taken the proper steps to make the evidence part of the record; the fact that this court, as a concession to the appellant, considered the case as though the evidence were properly before it, made no difference.

An administrator having paid the estimated cost of printing a record on appeal and that payment having been disallowed in schedule B of his account, there also should have been struck from schedule A the amount of a refund received by him from the register.

An administrator having been removed for cause, an item in his account charging the estate with the cost of defending in the Probate Court the petition for his removal rightly was disallowed, nor could he charge the estate with the expense of attempting to establish items in schedule B of his accounts which were disallowed.

Notwithstanding the provisions of G. L. (Ter. Ed.) c. 206, § 4, an administrator's sale of an asset of the estate, though made for an improper purpose, could not be avoided and the proceeds thereof ordered returned to the estate by a decree disallowing an item in schedule A of his account representing gain received from the sale and ordering the asset added to schedule C, if it appeared that other parties involved in the sale were not before the court; such decree was modified by an order that those items be struck out and the accounts remain open for a reasonable time so that the title of the buyer might be determined in proceedings where all parties in interest were before the court.

An administrator having made a prepayment to a beneficiary believing that the assets of the estate would be sufficient, could not maintain a petition for its repayment as made under misapprehension of fact, if, after he was charged through disallowance of improper disbursements set out in his account, the account would show assets to warrant such payment.

PETITIONS AND ACCOUNTS in the Probate Court for the county of Hampden in the matter of the estate of Elizabeth H. Bowles, late of Springfield.

From decrees entered in the Probate Court by order of *Campbell, J.,* A. Barr Comstock appealed.

*R. G. Dodge,* (*F. H. Free, Jr.,* with him,) for A. Barr Comstock.

*D. M. Macaulay, pro se.*

*R. Chapin, pro se.*

*S. H. Bowles, pro se.*

RUGG, C.J.  These are appeals by A. Barr Comstock, administrator with the will annexed of the remaining estate of Elizabeth H. Bowles, from numerous decrees entered in a probate court on August 3, 1934.  Many matters were heard together.  Appeals from all these decrees were consolidated and presented on a single record. *Lumiansky* v. *Tessier,* 213 Mass. 182, 188–189.  Several of these appeals have been waived.  Only those now pressed need be stated

or considered. These fall into three groups, as described in the brief filed in behalf of Mr. Comstock: "1. Decrees removing Mr. Comstock as administrator." These decrees were entered on two separate petitions, one by Sherman H. Bowles and one by Donald M. Macaulay, trustee. "2. Decrees disallowing certain items in Mr. Comstock's second, third, fourth and fifth accounts relating (a) to the expense of an appeal taken by him which was before this court in *Bowles* v. *Comstock*, 286 Mass. 159, and (b) to the restoration in schedule C of the item of five shares of the stock of The Republican Company which the accountant had sold." "3. Decree dismissing Mr. Comstock's petition in equity for the return of $1,100 paid by him to the residuary trustee under a misapprehension, the money being now required for the further administration of the estate." The disallowance of certain expenses in connection with hearings on matters involved in the present appeals, appearing principally in the fourth account, and one similar item in the fifth account, is also argued by Mr. Comstock to be erroneous.

The record is very voluminous. A brief statement of the relations of the parties to each other and to the estate is this: Elizabeth H. Bowles, a widow, died testate on January 2, 1924, a resident of Springfield in this Commonwealth. She left two sons, Samuel Bowles and Sherman H. Bowles. By her will she gave the residue of her estate to trustees to hold for the benefit of Samuel, the income to be paid to him during his life and either the principal or the income to be paid after his death to his children according to the discretion of the trustees. If he should leave no children, then the principal was to be paid to the other son, who was named as one of the two trustees. The executor named in the will declined to serve and Sherman H. Bowles was appointed administrator with the will annexed in 1924. He filed no account of his administration until, late in 1930, an order to render an account was filed. In October, 1932, the firm of which Mr. Comstock was a member entered an appearance for Samuel Bowles. Resignation of Sherman H. Bowles as administrator with the will annexed was filed in October, 1932. At that time the administration of the estate was

not completed and no account had been rendered. That resignation was allowed on January 5, 1933, and on the same day Mr. Comstock was appointed administrator *de bonis non* with the will annexed and filed his bond for $10,000. On the same day Sherman H. Bowles, on petition by his brother Samuel, brought on the advice of Mr. Comstock, was removed as trustee under the will of their father as being evidently unsuitable for the faithful discharge of his trust. There was protracted litigation in connection with the settlement of the accounts of Sherman H. Bowles as administrator. He is apparently the active member of the family and is president, treasurer, clerk and a director of The Republican Company and as such has to do with the publication of certain newspapers in Springfield. The brother Samuel has been in poor health for some time, unable to work, and in unusually straitened circumstances, and has been for a time during these proceedings a public charge. He has no means of support and no expectation of income except from a trust under his father's will consisting chiefly of twenty-five shares of the stock of The Republican Company, now paying no dividends, and from the small remainder of trust under the will of his mother.

The case was heard at great length before the trial judge. No report of his findings of material facts was requested or made. The evidence is reported in full. The decisions were rendered with the brevity appropriate to decrees in equity and probate practice. The evidence was largely oral with many exhibits. The issues raised involved the bias, prejudice, soundness of judgment in the management of the estate, singleness of purpose in the performance of fiduciary duties, and the general capacity of Mr. Comstock. While there was little, if any, sharp contradiction in the oral testimony of the several witnesses, the decision of the trial judge well might have depended in important particulars upon the personal appearance and manner of testifying of Mr. Comstock. In these circumstances this court in considering an appeal is not in the same position as the trial judge, but the general rule applies that, while it is the duty of this court upon an appeal like the present to examine the evi-

dence and decide the case upon its own judgment, "yet where findings and inferences rest upon the observation of witnesses who have testified orally, the appellate court does not reverse unless plainly wrong." *Johnson* v. *O'Lalor*, 279 Mass. 10, 13. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 333. *Eddy* v. *Eddy*, 281 Mass. 156, 158. *Draper* v. *Draper*, 267 Mass. 528, 531. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Dickinson* v. *Todd*, 172 Mass. 183. *Bratt* v. *Cox*, 290 Mass. 553. The case at bar is distinguishable from decisions like *Newburyport Society for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532, where the oral evidence was not open to dispute as to its substance, and its weight did not depend upon inferences as to the credibility of the witnesses.

1. The allegations of the petition of Sherman H. Bowles for the removal were that Mr. Comstock was biased and prejudiced against him, that he had mismanaged the estate and charged excessive fees for services, had instituted litigation which was without merit and not brought in good faith for the benefit of the estate, and was wasting assets of the estate and was evidently unsuitable for the discharge of his trust. The decree of removal on this petition recited that some of the allegations set forth in the petition were true. It was alleged in the petition by Mr. Macaulay, as trustee under the will of Elizabeth H. Bowles, for such removal that "on or about April 12, 1934, the said Comstock as administrator aforesaid purported to sell to one Lyman H. Hooker, trustee, and did transfer to said Hooker, trustee, five shares of the common stock of The Republican Company, property of the estate of said Elizabeth H. Bowles, under an agreement that he the said Comstock should represent said Hooker in certain litigation concerning The Republican Company and would be paid therefor by said Hooker or the persons he represented legal fees and charges and that said attempted sale and transfer of said stock was for the direct or indirect personal advantage of said administrator; and said Comstock is evidently unsuitable for the discharge of said trust." The decree of removal on this petition recited that these allegations were true.

A.   The facts with reference to the Macaulay petition for removal might have been found to be these in brief: Mr. Macaulay was appointed trustee under the will of Elizabeth H. Bowles on January 6, 1933.  Part of the assets of the estate which came to Mr. Comstock as administrator were five shares of stock in The Republican Company.  No dividends were being paid on that stock.  Mr. Comstock made some investigations as to the financial state of that company and the value of the stock.  It was appraised in the inventory filed by him in August, 1933, as of "Value uncertain."  He ascertained that the Union Trust Company of Springfield in June, 1929, had taken a mortgage in the amount of $400,000 on certain real estate of The Republican Company.  The officers of the trust company asserted that default had existed for some time on the principal and interest of this mortgage.  They thought that there was ground for belief that substantial assets formerly in the treasury of The Republican Company had been dissipated.  They were investigating what steps could be taken to restore those assets to The Republican Company.  They had apprehensions that that company might be insolvent.  Sherman H. Bowles told a representative of the trust company that "The Republican Company was a shell" which was understood "to mean it had been denuded of all its assets."  Mr. Comstock had conferences with representatives of the trust company at which ultimately a plan in considerable detail was evolved whereby a petition for the appointment of a receiver of The Republican Company and its subsidiaries should be filed in the name of some stockholder, the management of the company be changed, and the trust company become holder of an issue of preferred stock in the newspaper company.  Mr. Comstock suggested to the officers of the trust company that he be allowed to investigate the affairs of The Republican Company and interview its stockholders in an effort to accomplish a change in management without receivership proceedings.  He did so but these endeavors came to naught.  A petition for receivership by the trust company as creditor was deemed inadvisable.  Mr. Comstock tried to make arrangements whereby his client Samuel Bowles

could buy the twenty-five shares of stock held by the trustee under the will of his father of which Samuel Bowles and Sherman H. Bowles were beneficiaries. Petition to authorize such sale at a price of $100 a share was filed in the Probate Court but no final action appears to have been taken on that petition. No stockholder was procured to institute proceedings for the appointment of a receiver. Early in February the trust company paid Mr. Comstock $500 as a fee for services and he decided to sell to the trust company the five shares of stock in The Republican Company owned by him as administrator for the sum of $150 per share or $750 in all, with the understanding that if the court should determine that the value was greater than $750, the trust company would hold Mr. Comstock harmless from any personal liability as administrator. The trust company paid him at other times between July 1, 1933, and April 23, 1934, an aggregate of $375 for expenses, the total payments to him by the trust company for services and expenses being thus $875 in connection with his investigations concerning The Republican Company. The certificate for these five shares of stock was indorsed and turned over to Lyman H. Hooker as trustee, connected with the Framingham National Bank, who signed a declaration of trust drawn by Mr. Comstock to the effect that the income should be applied first to the repayment of the sum advanced for the purchase of the shares from the former owner and then mainly for the benefit of Samuel Bowles and his family. This transaction was completed on April 11 or April 12, 1934, and the trust company paid Mr. Comstock as administrator $750 for this stock. The trust company purchased it for the purpose of securing an owner of stock who would proceed with a suit in equity against The Republican Company for a receiver. Mr. Comstock expected further compensation for his services from the trust company and Hooker was not to pay him. Part of the arrangement for the sale of these five shares of stock by Mr. Comstock was that the stock was to be transferred to Lyman H. Hooker, who should hold it under the declaration of trust and who should employ Mr. Comstock as attorney to bring receiver-

ship proceedings as a stockholder against The Republican Company, and that the trust company was to pay Mr. Comstock. There was evidence that the trust company expected to pay Mr. Comstock for services and expenses between $3,000 and $4,000. In April, 1934, shortly after the sale of the five shares of stock by Mr. Comstock, a suit in equity was brought by him in the name of Hooker as trustee as owner of those shares against Sherman H. Bowles and other defendants, including The Republican Company. The allegations and prayers of that bill are many and long. They include numerous charges against Sherman H. Bowles and prayers for the appointment of a receiver for The Republican Company and its subsidiary companies. While the precise amount of compensation to be paid Mr. Comstock for services in this suit was not determined, both he and the trust company expected that it would be substantial and that Lyman H. Hooker was to be under no liability to him. At the time of the transfer of this stock, there were no outstanding bills against the estate of Elizabeth H. Bowles. Mr. Comstock's position was that he needed funds to pay expected claims against that estate and hoped to increase the value of the interests of his client Samuel Bowles in the stock of The Republican Company. He felt it essential to rehabilitate that company so that its "stock would become of some value." He testified that he thought that his relations with the trust company gave him "an unusual opportunity to sell stock that seemed" to him "absolutely worthless for a good price" and to protect his client Samuel Bowles and other stockholders in The Republican Company. The expected claims against the estate of Elizabeth H. Bowles related chiefly to services rendered and to be rendered and to expenses incurred and to be incurred by Mr. Comstock in litigation of the estate and in the settlement of his accounts.

The court was empowered to remove Mr. Comstock as administrator if he became "unsuitable" for performing the trust incumbent on him. G. L. (Ter. Ed.) c. 195, § 11. The duties of Mr. Comstock as administrator were strictly fiduciary in nature. Those duties were to close the settle-

ment of the estate of Elizabeth H. Bowles as soon as reasonably practicable and to turn over the residue to Mr. Macaulay, who had been appointed trustee under her will the day following the appointment of Mr. Comstock as administrator. Mr. Comstock as administrator was authorized to sell the stock for the purpose of converting it into money in a proper way. *Shaw* v. *Spencer*, 100 Mass. 382, 393. *Lyman* v. *National Bank of the Republic*, 181 Mass. 437, 438. His primary responsibility was to protect the trust committed to his charge. "No self interest can be allowed to conflict with this obligation. He cannot derive any personal advantage at the expense of the trust, nor put himself in a position antagonistic to the beneficiaries of the trust." *Anderson* v. *Bean*, 272 Mass. 432, 448. Unsuitableness to perform the trust may arise from a variety of causes. An administrator "is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his official duty." *Putney* v. *Fletcher*, 148 Mass. 247, 248. A sale of property of an estate to a third person by an administrator for his direct or indirect personal advantage falls within the inhibition of this rule. *Vinal* v. *Gove*, 275 Mass. 235, 241, 242. *Winship* v. *Bass*, 12 Mass. 199, 200. *Drake* v. *Green*, 10 Allen, 124, 126. *Hayes* v. *Hall*, 188 Mass. 510, 511. One purpose of making the sale as stated by Mr. Comstock was to enhance the value of the stock of The Republican Company by the successful prosecution of the receivership proceedings. That enhancement of value could not accrue to the advantage of the estate of Elizabeth H. Bowles because by the sale the stock ceased to be the property of that estate. The agreement of the trust company to hold Mr. Comstock harmless if the court should determine that the stock was worth more than the price paid did not relate to value ascertained as of a time subsequent to the sale. The personal advantage to accrue to Mr. Comstock from conducting the receivership litigation and obtaining compensation therefor from the trust company arose solely through the sale of these shares of stock to the trust company. That was a direct or indirect personal advantage inconsistent with his fiduciary duty. His

judgment as to the best interest of the estate touching the stock ought not to be clouded or warped by the personal advantage to be derived by him from carrying on the receivership litigation at the expense of the trust company as the one who paid for the stock. The situation is quite different from coöperation by a fiduciary with others having similar interests for the conduct of necessary litigation at joint expense. It cannot in our opinion rightly be held that the decree for removal of Mr. Comstock on the petition of Mr. Macaulay is not sustained by the evidence.

B. The allegations in the petition of Sherman H. Bowles for the removal of Mr. Comstock as administrator contain no specifications of details but are general in nature. It is manifest from the record that the prosecution by Mr. Comstock of the prolonged adversary proceedings respecting the accounts of Sherman H. Bowles as administrator arose from disagreements as to the handling of the estate by the latter. He and his brother were sharply at variance on many points. Both were beneficiaries under the will of their mother, though not in the same degree. Antagonism on the part of Sherman H. Bowles toward Mr. Comstock by reason of his opposition to the allowance of the accounts of the former for his alleged malfeasance in administering the estate was not unnatural. Although the bill in equity for receivership was not filed until after this petition for removal of Mr. Comstock was filed, it appeared that for a considerable time before he was engaged in preparing it. The allegations in that bill were somewhat drastic as to misconduct of Sherman H. Bowles in the management of The Republican Company. It has not been determined whether those allegations are true. In any event they manifest some degree of bias against a person charged with such conduct. Mr. Comstock was counsel for Samuel Bowles in litigation involving the personal conduct of his brother Sherman while administrator of the estate of their mother. His duty as such counsel might well have been regarded as having become incompatible with his duty as administrator to guard and represent fairly and impartially the interests of both brothers as beneficiaries of the estate

under the will of Elizabeth H. Bowles. There is ground for the inference that the management of the estate by Mr. Comstock was predominantly for the benefit of his client Samuel Bowles and was not directed to its final settlement at the earliest moment practicable. Unsuitableness of one to act as a fiduciary is sufficient without misconduct to constitute cause for removal. The suitableness of Mr. Comstock at the time of his appointment as administrator may have been found to have changed by reason of hostilities and other conditions arising subsequently to that appointment. Unsuitableness is not restricted to instances of absolute unfitness but includes "an unfitness arising out of the situation of the person in connexion with the estate." *Thayer* v. *Homer*, 11 Met. 104, 110. *Gray* v. *Parke*, 155 Mass. 433, 435. *Osborne* v. *Craig*, 251 Mass. 169. *Morgan* v. *Morgan*, 267 Mass. 388, 392. We think that the decree of removal on this petition cannot be pronounced plainly wrong.

2. The appeals of Mr. Comstock from decrees disallowing certain items relating to his appeal in *Bowles* v. *Comstock*, 286 Mass. 159, are now to be considered. Those items of expense arose on an appeal from the decree allowing the account of Sherman H. Bowles as administrator of the estate of Elizabeth H. Bowles. The largest item of this group was $3,000, being the cost as estimated by the register of probate for printing the record which contained a full report of the evidence. This appeal was taken both by Mr. Comstock as administrator and by Samuel Bowles as beneficiary under the will. The latter was without question a person aggrieved by that decree. The entire expense of that appeal was charged to and paid by the estate. No part of it was paid by Samuel Bowles. The contention that Mr. Comstock as administrator was not a person aggrieved by that decree and therefore not entitled to appeal cannot be supported. The administrator *de bonis non* is the representative of the estate and holds all unadministered property in trust for the benefit of creditors and beneficiaries. It is his province to see that such an account is settled correctly. He is aggrieved in the property held by him in trust if there

is failure to account for all that is due to the estate and he may appeal with respect to such an account. *Wiggin* v. *Swett*, 6 Met. 194, 198. *Pierce* v. *Gould*, 143 Mass. 234, 235. The case at bar is distinguishable from cases like *Dockray* v. *O'Leary*, 286 Mass. 589, and *MacDonald* v. *MacDonald*, 291 Mass. 299, where the administrator brought all parties in interest before the court on a petition for instructions and was held not to be aggrieved by the decree since he had already done his full duty by bringing the parties into court, and the further controversy concerned others and not himself. Samuel Bowles and Sherman H. Bowles were not the only persons interested in this estate. Persons unborn and unascertained had possible interests and a guardian *ad litem* was appointed to represent them. The administrator *de bonis non* might be responsible to them. In any event, it was his duty to see that the accounts of his predecessor were settled correctly. It was held, however, in *Bowles* v. *Comstock*, 286 Mass. 159, that the report of the evidence was not properly a part of the record and was not before this court on that appeal. The reason was that the record did not show that a stenographer to take the evidence was appointed as required by law. *Bowles* v. *Comstock*, 286 Mass. 159, 162. Since it was plain that the appellants could not prevail, the case was considered as if the report of the evidence were before the court. That did not validate the purported report of evidence. A concession to a party for the purpose of considering and deciding his case does not make imperfect procedure regular. It simply affords a basis for disposing of the case. The administrator cannot rightly charge the estate for an expense of printing which was not warranted by law. It was not an expense for the benefit of the estate and was not properly included in the account. That item of expense was rightly struck from the account.

It is manifest from an inspection of the record in *Bowles* v. *Comstock*, 286 Mass. 159 (which is an exhibit in the case at bar), that the chief expense in the preparation of that record was in the printing of the evidence. No report of the material facts was made by the trial judge. No such

report was requested. Without report of the evidence the findings made by the trial judge therefore were conclusive as to the facts. Without that evidence or a report of material facts no substantial question of law was presented by that appeal. The only result possible as matter of law in those circumstances was that the decree should be affirmed. *Jordan* v. *Ulmer*, 237 Mass. 577. *Flaherty* v. *Whitin*, 250 Mass. 177, 179. *Abeloff* v. *Peacard*, 272 Mass. 56, 59. *Moore* v. *Tyler*, 280 Mass. 337. *Everett* v. *Merrill*, 282 Mass. 72, 74. *Sandeen* v. *Tibbetts*, 284 Mass. 385. In these conditions it was a vain expenditure of money for Mr. Comstock to bring to this court an appeal from the decree allowing the account of Sherman H. Bowles as administrator. It was unjustifiable on the part of a fiduciary. No charge for such expenditure can properly be made against a trust fund. The right of one administering a trust to charge expenses of litigation against a fund does not necessarily depend upon success. But where it is manifest that the appeal is doomed to failure as matter of law according to well settled principles, there can be no charge for expenses. The items for disbursement and expenses allocable to the appeal in the second and third accounts were rightly disallowed for the same reason.

There is, however, an obvious error with respect to this matter in the decree allowing the second account. In schedule B the accountant asked to be allowed by item 1 for the payment to the register of probate of $3,000 for estimate of printing the record on appeal. Then in schedule A by item 12 he charged himself with a refund of a part of that deposit amounting to $878.04. By the decree item 1 of schedule B was disallowed, but item 12 of schedule A, being a refund of a part of item 1 of schedule B, was allowed as a charge. Thus the accountant stands charged with the $878.04. Plainly if the payment of $3,000 is disallowed, the receipt of $878.04 should also be struck out. The actual cost of printing the record was $2,121.96. This error affects the total of the balance charged to the accountant in schedule C of the second, third, fourth and fifth accounts as allowed by the decrees. It follows that the decrees allowing

each of these accounts must be modified for the correction of this error. The circumstance that this court decided the case upon other grounds as matter of concession to the parties although motion was made to strike the report of the evidence from the record does not confer rights upon the administrator, which he would not otherwise have, to make charges against the estate for expenses. All charges for disbursements in connection with that appeal were rightly disallowed.

3. In the decrees as to the fourth and fifth accounts of Mr. Comstock the trial judge disallowed items of expense aggregating $672.89. These were expenses incurred in connection with the petitions for removal of Mr. Comstock as administrator which were allowed and perhaps with respect to items in his accounts which were disallowed. It has been decided earlier in this opinion that there was no error in entering those decrees for removal. These items of expense were rightly disallowed because they were of no benefit to the estate. The decrees of removal establish the unfitness of Mr. Comstock to continue to administer the estate. He was not entitled in all the circumstances disclosed to charge these expenses against the estate. *Brackett* v. *Fuller*, 279 Mass. 62, 71, 72, and cases there collected. *McIntire* v. *Mower*, 204 Mass. 233, 235. It is the general rule in courts of probate that costs of unnecessary litigation must be borne by the party causing them. This rule applies to a fiduciary in the administration of his trust. *Bogle* v. *Bogle*, 3 Allen, 158. *Blake* v. *Pegram*, 109 Mass. 541, 558. *Loring* v. *Wise*, 226 Mass. 231, 235. For the same reason such expenses, if any, as were incurred in the attempt to establish items of charge against the estate which have been disallowed were struck from the account rightly in the circumstances here disclosed. In this connection it is to be observed that a motion by Mr. Comstock for allowance for fees and expenses touching these and other matters was granted in the sum of $800. This motion apparently covered somewhat the same ground as the items of expense which were disallowed. In any event, no error is disclosed on the record with respect to the disallowance of these

items of account and the granting of the motion. G. L. (Ter. Ed.) c. 215, § 45. Moreover it appears from the accounts as allowed that substantial sums were approved for compensation and expenses to Mr. Comstock and his associates. See *Bailey* v. *Crosby*, 226 Mass. 492; *Gallagher* v. *Phinney*, 284 Mass. 255, 258, where it was held that the allowance of compensation for services of an executor or administrator is not an absolute right but rests in certain circumstances largely in the discretion of the court. There was no error and nothing plainly wrong in this branch of the case.

4. In the third account there was in schedule A under date of April 13, 1934, item 1 as follows: "Gain on sale of 5 shs. Republican Company Capital Stock — inventoried as of uncertain value, sold for $150 per share and such further amount, if any, as may be involved in a final determination of value by the Court $750 00." That item was disallowed in the decree; and it was further ordered "that there be inserted in Schedule C. the following item: Five shares Republican Company Capital Stock — value uncertain." A similar order as to the insertion of the same "following item" in schedule C occurs in the decrees entered concerning the fourth and fifth accounts of Mr. Comstock as administrator. The evidence was direct and undisputed that Mr. Comstock as administrator made sale and delivery of these five shares of stock owned by the estate and received therefor $750. The price was paid by the Union Trust Company. The certificate of stock was indorsed to Lyman H. Hooker, trustee, and delivered to him. He executed a declaration of trust as to those shares declaring that he held them for several beneficiaries. Mr. Comstock as administrator before that sale held the legal title to those shares and had absolute control over them as property of the estate. He had a right to sell them. *Shaw* v. *Spencer*, 100 Mass. 382, 393. *Crocker* v. *Old Colony Railroad*, 137 Mass. 417. *Lyman* v. *National Bank of the Republic*, 181 Mass. 437. *Taylor* v. *Trefrey*, 282 Mass. 555. There can be no doubt on the evidence in the record that a sale and delivery of the stock and payment therefor actually took

place. There was compliance with all the forms of law to constitute a sale. That fact is not affected by the finding inserted in one of the decrees for removal of Mr. Comstock that such "sale and transfer" were "for the direct or indirect personal advantage of" Mr. Comstock. That finding recognized that a sale took place. Neither Lyman H. Hooker nor the Union Trust Company is a party to those proceedings. Hooker testified as a witness in the trials of these petitions, as did also the attorney and the president of the Union Trust Company. An informal agreement of counsel was made during the hearings that the certificate of stock for the five shares should remain with the Union Trust Company. But Hooker and the trust company are in no sense parties to any of these proceedings. Whatever may be the effect of the decree for removal of Mr. Comstock because of making that sale of the five shares of stock, already considered in this opinion, it does not bind Hooker or the Union Trust Company. They have not had their day in court on the issues there involved. The sale was in any event voidable, not void. It stands until set aside under some proper legal proceeding. *Ives* v. *Ashley,* 97 Mass. 198, 204. *Walker* v. *Walker,* 101 Mass. 169, 172. *Denholm* v. *McKay,* 148 Mass. 434, 441.

It is provided by G. L. (Ter. Ed.) c. 206, § 4, that in settling the account of any administrator or other fiduciary the Probate Court may require him "to produce during the proceedings or afterward . . . any securities . . . comprised in the account . . . and to replace any moneys or property that have been improperly applied or disposed of, or the value thereof, . . . and the proceedings upon every such account shall be considered for all purposes to be proceedings in equity . . . ." Broad powers are thus conferred upon probate courts in the settlement of accounts of fiduciaries. *Cook* v. *Howe,* 280 Mass. 325. But those powers do not extend so far as to permit adjudication as to rights of parties not before the court. Whether the sale of the shares of stock by Mr. Comstock ought to be set aside in equity is not before us on this appeal. Until that sale is set aside on proper proceedings it stands. There is

no adjudication that it was a fraudulent sale. The letter of Mr. Macaulay as trustee under the will of Elizabeth H. Bowles under date of May 4, 1934, to Mr. Comstock was simply a notice that he elected to rescind the transaction, and a statement that if the stock was not returned to the estate he should "bring a petition in equity to rescind it." A proceeding of that nature against the Union Trust Company and Lyman H. Hooker and Mr. Comstock would have settled the rights of all parties. The record does not show that any such petition has been brought. It does not appear whether it is possible for Mr. Comstock to comply with the mandate of the decrees respecting the third, fourth and fifth accounts to the effect that he possesses among the assets of the estate "Five Shares Republican Company Capital Stock — Value uncertain." There is nothing in the record to indicate that such shares can be bought in the market. There is nothing to show that Mr. Comstock can repossess himself of these particular five shares until there is a decree in equity, after a trial as to the rights of the Union Trust Company and Lyman H. Hooker, declaring that his sale of those shares has been set aside.

We think that the parts of the decrees entered on the third, fourth and fifth accounts touching these five shares of stock were not warranted on the evidence. On the facts disclosed they do not fall within the scope of the power conferred by G. L. (Ter. Ed.) c. 206, § 4. These decrees are modified for the purpose of striking out the parts relating to those five shares of stock. The accounts on this matter are to remain open for a reasonable time to enable the parties in interest to cause inquiry in equity to be made whether the sale ought to be avoided, having regard to the rights of Lyman H. Hooker and the Union Trust Company. Further proceedings may then be had as to the determination of those items. See *Lenz* v. *Prescott*, 144 Mass. 505, 515.

5. There is an appeal from a decree dismissing the petition of Mr. Comstock asking for the return of $1,100 paid by him to the residuary legatee under a misapprehension. This petition was based on the accounts as filed which

showed that that sum might be needed for payment of charges against the estate. The ground for the entry of the decree dismissing that petition was a finding by the trial judge inserted in the decree that that sum "will not be necessary to repay the petitioner for the payment of charges of administration." That finding doubtless was founded on the disallowance by the trial judge of the expenses paid by Mr. Comstock in printing the record and other disbursements in prosecuting his appeal in *Bowles* v. *Comstock*, 286 Mass. 159, whereby the assets of the estate with which he was held chargeable were found to be increased by the amounts charged in the accounts for those disbursements. The action of the trial judge in disallowing those disbursements shown in the accounts of Mr. Comstock has been upheld earlier in this opinion. The decree dismissing this petition for the return of $1,100 was right.

The decree allowing the second account is modified by striking out item 12 in schedule A amounting to $878.04, and by diminishing by that amount the total of schedule A and the balance shown by schedule C. As thus modified and corrected, that decree is affirmed. The decrees allowing the third, fourth and fifth accounts are modified (1) by correcting the same error just described as to the decree on the second account which is carried forward in the total of each balance charged against the accountant, (2) by striking out the portions touching the five shares of stock in The Republican Company, and (3) by ordering that the items in the account touching those shares stand for further hearing after opportunity for a determination in equity wherein the rights of Lyman H. Hooker, trustee, and the Union Trust Company may be adjudicated, and as thus modified these several decrees are affirmed. The decrees as to the removal of Mr. Comstock as administrator, and denying his petition for repayment of $1,100 by Mr. Macaulay as trustee are affirmed. All appeals from the other decrees have been waived.

*Ordered accordingly.*