In the Matter of the GUARDIANSHIP OF H. Richard BROWN and Lottie C. Brown.

Garland R. BROWN, Petitioner-Appellant,

v.

Lee Wendell BROWN, Lincoln National Bank and Trust Co., Successor Trustee and Guardian of the Estates of H. Richard Brown and Lottie C. Brown; and Donald C. Doxsee, Guardian of the Persons of H. Richard Brown and Lottie C. Brown, Respondents-Appellees.

No. 3–1080A321.

Court of Appeals of Indiana, Third District.

June 24, 1982.
Rehearing Denied Aug. 19, 1982.

Allen Circuit Court on June 2, 1980. The court removed Garland and Lee from their respective offices as co-guardians of the persons and estates of their parents, Harold R. and Lottie C. Brown. The court also removed Garland and Lee from their offices as co-trustees of a trust executed by their parents, Harold and Lottie Brown. Garland appeals the court's removal of him from the offices of co-trustee and of co-guardian. Lee appeals the court's removal of him from the office of co-guardian. Lee does not raise his removal as co-trustee as an issue in this appeal. Since the appeal was initiated Harold Brown has died but the issues raised by Garland and Lee remain relevant with regard to their mother Lottie.

The facts disclose that Harold Brown and Lottie Brown are the parents of one daughter, Ursel, and three sons, Garland, Lee and Ivor. In December of 1978 Harold and Lottie executed an irrevocable trust and transferred into this trust their property and income. Harold and Lottie were the primary beneficiaries of the trust and upon their deaths the trust assets were to be distributed to their four children. In the trust the settlors Harold and Lottie appointed Garland and Lee to serve as co-trustees.

In January 1979 Lottie assigned to Garland, a licensed physician, the right to make all decisions concerning her health and medical care. In July 1978 Harold had also authorized Garland to make the necessary decisions concerning his health and medical care.

George Kowalczyk, John R. Kowalczyk, Robert J. Parrish, Fort Wayne, for petitioner-appellant.

William E. Harris, Torborg, Miller, Moss & Harris, Jerrald A. Crowell, Bowman & Crowell, Fort Wayne, for respondents-appellees.

GARRARD, Judge.

The appellant, Garland R. Brown, and appellee-cross appellant, Lee W. Brown, are appealing from a judgment rendered by the

In July 1979 Garland and Lee were appointed co-guardians of the persons and estates of their parents due to the physical infirmities of Harold and Lottie. Harold had suffered several strokes and other medical problems, which required constant medical attention. He was in a nursing home until December 1978. Garland then moved him into an apartment located above Garland's office in Fort Wayne, and he lived there until his death.

After the guardianship was established, Lottie remained with Lee. He resided in Ohio near his job during the week and on the weekends returned to the family residence in Muncie. Lottie travelled back and forth with Lee. Lee allowed Lottie to continue doing housework although she was in her early 80's and suffered several medical problems. Lottie's medical condition included cancer of the bladder, unstable blood pressure, a heart condition requiring a pacemaker, diabetes and a hernia. Proper treatment of these problems required that Lottie maintain a special diet and that her pulse and blood pressure be taken daily. The evidence most favorable to the judgment is that Lee failed to provide Lottie with the special diet and he failed to keep adequate records of Lottie's pulse and blood pressure. Due to Lee's neglect of the diet and the exertion associated with the housework, Lottie's health deteriorated further. At this point Garland interceded, and moved Lottie into the apartment in Fort Wayne where she was under the direct care of Garland.

In January 1980 Garland petitioned the Allen Circuit Court, requesting that Lee be removed from his position as co-trustee and co-guardian. In response Lee filed a cross-petition seeking the removal of Garland as co-trustee and co-guardian and urged that the Fort Wayne National Bank be appointed as sole trustee.

The Allen Circuit Court on June 2, 1980, after a full evidentiary hearing lasting three days, entered the following findings and made the following order and decree:

"The Court, having had this cause under advisement, now makes its Findings of Fact, as follows, to wit:

1. That, heretofore, Garland R. Brown and Lee Wendell Brown were duly appointed co-guardians of the person and estate of their parents, H. Richard Brown and Lottie C. Brown.

2. That H. Richard Brown is partially paralyzed from a stroke, is not able to walk and has difficulty speaking. If listened to very carefully one is able to understand him most of the time. He requires a special diet in which all food is pureed because of a colitis condition, and he has a pacemaker. Mr. Brown is 84 years of age.

3. That Lottie C. Brown has high blood pressure and is a diabetic making it necessary to be on a special diet and to eat her meals on a special schedule. She has had past problems with a hernia condition and she has a pacemaker. Mrs. Brown is 83 years of age.

4. That Mr. and Mrs. Brown are the parents of four adult children; namely, Clinton Ivor Brown, Ursel Bartley, Lee Wendell Brown, and Garland R. Brown.

5. That there has been much strife and dissension among some of the Brown children, which has had a disturbing and adverse effect upon their parents.

6. That Mr. & Mrs. Brown are entitled to live in an environment of peace and quietude, where their physical and personal needs are provided for by others.

7. That Lee Wendell Brown's inability and neglect to attend to the properly prescribed medical attention and diets of his parents has rendered him disqualified, unsuitable and incapable of serving as co-guardian and co-trustee of his parents.

8. That, although working and living in Celina, Ohio five days a week, Lee Wendell Brown insists on spending weekends on his parents' former residential property in Muncie, Indiana, where he pays no rent, and that the real estate taxes and utility bills in connection with the property are paid from his parents' Trust; and that said asset provides no income for the Trust, and is a drain on said Trust.

9. That Lee Wendell Brown as Co-Guardian and Co-Trustee is unable to make personal, family and business decisions involving his parents.

10. That Garland R. Brown is a physician holding a duly issued unrestricted license to practice his profession as a medical doctor in the State of Indiana; that at their request, he has been the personal physician of his parents for many years and is acutely aware of the

special medications and dietary requirements of his parents.

11. That Garland R. Brown has now established his parents in an apartment in Fort Wayne where their medical and personal needs are most adequately provided for and where the folks are living together as husband and wife for the first time since May of 1978.

12. That Garland R. Brown and Lee Wendell Brown are Co-Trustees under the Trust of H. Richard Brown and Lottie C. Brown dated December 29, 1978.

13. That Lee Wendell Brown has attempted to change said trust so that his parents would disinherit their daughter, Ursel Bartley.

14. That Lee Wendell Brown is indebted to said trust in the amount of $3,000, with interest at 7½ per cent per annum from April 2, 1976.

15. That said trust, under the management of Garland R. Brown, Co-Trustee and Co-Guardian is currently earning income sufficient to provide for the care and maintenance of the settlors of said trust and/or wards herein.

16. That said guardianship assets consist of social security benefits received from U.S. Government and monthly checks for H. Richard Brown from the Indiana Teachers' Retirement Fund.

17. That the social security benefit payments, since July 2, 1979, have been controlled by said Garland R. Brown, coguardian, and he has deposited said funds in his personal checking account which bears the names of Garland R. Brown, Diantha Brown, H. Richard Brown and Lottie C. Brown, and said benefits are then transferred by Garland R. Brown into a trust checking account established by said wards of which they are principal beneficiaries. The benefits received from the Teachers' Retirement Fund are deposited by Garland R. Brown into the trust checking account.

18. That in January 1980, the coguardian Garland R. Brown executed a lease on behalf of said wards without the consent of Lee Wendell Brown for the premises at 1207 Three Rivers Apartments north. That Garland R. Brown maintains his office at 1005 in the same apartment building; that no one is allowed to visit with said wards without the consent of Garland R. Brown; that all telephone calls to and from said wards are monitored through the office phone of Garland R. Brown; that the buzzer in the entryway to said apartment of said wards has been disconnected so that contact cannot be established directly with the apartment of said wards, and all conversations within the apartment of said wards can be monitored in the office of Garland R. Brown; that he has intentionally and systematically isolated and sequestered his wards from social contact with friends and family members; and that such acts are tantamount to imprisonment.

19. Said co-guardian Garland R. Brown has co-mingled funds belonging to said guardianship estate with a bank account belonging to said Garland R. Brown and wife Diantha Brown.

20. That another brother, Ivor Brown, called as a witness by Garland R. Brown, colluded with said Garland R. Brown in an attempt to defraud this Court by false testimony concerning a letter sent by said Ivor Brown to this Court.

21. That said Garland R. Brown as co-guardian and co-trustee has failed to keep proper accounting records in said trust and guardianship estates.

22. That in the best interests of said Trust and Guardianship Estates, said Garland R. Brown and Lee Wendell Brown should be removed as trustees of said trust account created by settlors herein; and also as guardians of the estates and persons of H. Richard and Lottie C. Brown.

23. The Fort Wayne National Bank has indicated it will accept and undertake the duties as successor trustee under said trust agreement if appointed by this Court.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED By the Court:

1. That Garland R. Brown and Lee Wendell Brown be, and hereby are, removed as trustees under the trust created by said H. Richard Brown and Lottie C. Brown under date of December 29, 1978.

2. That Lee Wendell Brown and Garland R. Brown be, and hereby are, removed as co-guardians of the estates and persons of H. Richard Brown and Lottie C. Brown.

3. That co-guardian and co-trustee Garland R. Brown file a documented accounting with this Court, together with all receipts and disbursements from said trust and guardianship estates, within thirty days from the date of this decree.

4. That co-guardian and co-trustee Lee Wendell Brown file a documented accounting and disbursement of any of his doings under said trust and guardianship estates, as well as an accounting of personal property of said wards located in the home of said wards in Muncie, Indiana, within thirty days from the date of this decree.

5. That co-guardian Garland R. Brown file an inventory with this Court of all personal property of said wards over which he has control within thirty (30) days.

6. That said guardianship and trust estate be charged with the costs of depositions and other legal expenses incurred by said co-trustees and co-guardians in this proceeding, except attorney fees incurred, which shall not be assessed against said guardianship or trust estate.

7. That said Fort Wayne National Bank is appointed successor trustee under said trust, and guardian of the persons and estates of H. Richard Brown and Lottie C. Brown, upon qualification and acceptance herein.

8. That said co-trustees Garland R. Brown and Lee Wendell Brown, and also as co-guardians herein, are directed to deliver or cause to be delivered to said Fort Wayne National Bank, as successor trustee and successor guardian of said H. Richard Brown and Lottie C. Brown all cash, bank certificates, bonds, notes, and any instruments for the payment of money belonging to said trust or guardianship, together with an accounting of all other personal property, and the abstract of title to the real estate of said wards, and any other papers belonging to said trust or guardianship estates after their final reports have been approved by the Court."

On July 10, 1980 Fort Wayne National Bank filed a written refusal to accept the appointment as successor trustee and guardian.

On July 31, 1980 Garland filed a motion to correct errors which basically alleged that his removal as trustee and guardian was in error.

On August 1, 1980 Lee filed his motion to correct errors alleging, among other things, that his removal as guardian was error.

Also, on August 1, 1980 an "Appointment of Trustee" was filed with the court. It nominated and appointed Garland as sole trustee. A "Selection of Guardian" was also filed on August 1. It requested the appointment of Garland as the sole guardian. These petitions were signed by Harold and Lottie.

On August 6, 1980 the court made the following entry:

"The Court, having considered the Motion to Correct Errors submitted by respondent Lee Wendell Brown, now denies same.

The Court, having examined the verified accounting of co-trustee Lee Wendell Brown, and co-guardian of the said H. Richard Brown and Lottie C. Brown, now approves the same.

The Court, having examined the accounting of Garland R. Brown, co-trustee and co-guardian of H. Richard Brown and Lottie C. Brown, now disallows said report and accounting for the reason that said report is unverified and so comingled with the trustee assets and guardianship assets, that it would take certified accountants to unravel same.

The Court, having considered the request of H. Richard Brown and Lottie C.

Brown requesting appointment of Garland R. Brown as sole trustee and as sole guardian, now denies said request for appointment.

The Fort Wayne National Bank having declined the appointment as Successor Trustee and Guardian of the Persons of H. Richard Brown and Lottie C. Brown, the Court now appoints the Lincoln National Bank and Trust Company as Successor Trustee of the irrevocable trust herein, as well as guardian of the estates of the said H. Richard Brown and Lottie C. Brown, subject to acceptance and qualification.

The Court hereby now appoints Donald D. Doxsee, Attorney at Law, Fort Wayne, Indiana, as guardian of the persons of said H. Richard Brown and Lottie C. Brown, upon his acceptance of said appointment and upon the filing of a bond in the sum of One Thousand ($1,000.00) Dollars.

Garland Brown, Petitioner, is now by the Court ordered to file verified accountings of personal property Inventory of Irrevocable Trust and Guardianship Estates on or before the 22nd day of August, 1980."

On August 15, 1980 Garland filed a second motion to correct errors, alleging as error the appointment of Lincoln National Bank and Trust Company as successor trustee and guardian and the appointment of attorney Donald Doxsee as co-guardian. The trial court has not ruled upon this second motion.

We re-order the issues which Garland presents as asserting that:

1. There being no finding of fact with respect to any statutory ground for his removal, the removal of Garland R. Brown as co-trustee was not supported by sufficient evidence and was contrary to law.

2. There being no finding of fact with respect to any statutory ground for his removal, the removal of Garland R. Brown as co-guardian was not supported by sufficient evidence and was contrary to law.

3. Findings 16, 17, first finding 19, second finding 19, 20 and 21 are not supported by the evidence and are contrary to law.

4. A vacancy existing in the office of trustee, the settlors had the right to appoint a successor trustee, and the court's sua sponte and ex parte nullification of settlors' appointment was void.

5. In its appointment of guardians for H. Richard Brown and Lottie C. Brown, the court failed to have due regard for the ward's wishes as required by statute.

6. Garland R. Brown as co-trustee was entitled to recover attorneys' fees for bringing his action.

Lee does not appeal his removal as trustee, but raises the following issues, asserting that:

1. The trial court's removal of Lee Wendell Brown as co-guardian was an abuse of discretion and contrary to law in that:

A. The only evidence submitted with respect to his lack of capability was testimony by witnesses found to be involved in an attempt to defraud the court; and

B. Garland R. Brown failed to prove his allegations for removal.

2. Lee Wendell Brown as a co-trustee was entitled to recover attorney fees from the trust for his expenses.

3. The trial court erred in overruling the objection of Lee Wendell Brown to the admission of alleged medical records that were dated more than twenty-seven (27) years prior to his appointment and qualification as co-guardian.

4. The trial court erred in finding that Lee Wendell Brown was indebted to the trust when the question of indebtedness was not alleged by Garland R. Brown in his petition to remove.

Both Garland and Lee assert error in the court's findings. While mention is made in the briefs of a motion for specific findings of fact, the index to the record does not indicate that such a motion was made and a review of the record does not reveal such a motion.

"It is clear that when findings of fact and conclusions of law are filed, 'the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' Indiana Rules of Procedure, Trial Rule 52(A). Findings are construed liberally and in conjunction with each other on appeal to support the judgment, and a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value. *In re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171." *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232, 1235.

## I. Removal of Trustee

Garland first contends that IC 30–4–3–29 delineates statutory grounds for the removal of a trustee, that the trial court failed to find that Garland's conduct as trustee was within the ambit of these statutory grounds for removal, and that therefore his removal was unsupported by the evidence and was contrary to law.

■ We disagree with Garland's interpretation of IC 30–4–3–29. The statute provides:

"(a) A trustee may be removed:

(1) by the court; or

(2) by the person, if any, who by the terms of the trust is authorized to remove the trustee.

(b) Upon petition by the trustee the court may, in its discretion, permit him to resign if his resignation will not be detrimental to the trust.

(c) Unless a successor trustee is named in or selected according to a method prescribed in the terms of the trust, the court may appoint a trustee to replace a removed, resigned, or deceased trustee and, on petition by a party to the trust, may appoint a cotrustee if to do so would facilitate more effective administration of the trust.

(d) For good cause shown, the court may at any time appoint a temporary trustee for such period of time, and to perform such duties, as the court may direct."

The statute states that the court has the power to remove a trustee but it does not prescribe when the court should exercise such a power. The language of the statute indicates that the power is discretionary, since the "trustee *may* be removed by the court." (Emphasis added) In *Massey v. St. Joseph Bank and Trust Co.* (1980), Ind.App., 411 N.E.2d 751, 753–4 we considered the import of IC 30–4–3–29 and found that "the removal of a trustee is within the sound discretion of the probate court" and that on appeal the "lower court will not be reversed except upon a finding of a clear abuse of discretion." In this light we review the court's removal of Garland from his position as trustee.

Garland argues that the only grounds for which a trustee can be removed are those set forth in the *Restatement (Second) of Trusts* § 107 (1959). The Study Commission Comment to IC 30–4–3–29 does state that subsection (a) follows § 107 of the *Restatement (Second) of Trusts* (1959)[1] and

1. "§ 107. Removal of Trustee
   A trustee can be removed
   (a) by a proper court; or
   (b) by the person, if any, who by the terms of the trust is authorized to remove the trustee.
   Comment on Clause (a):
   a. *Removal by court.* A court may remove a trustee if his continuing to act as trustee would be detrimental to the interests of the beneficiary. The matter is one for the exercise of a reasonable discretion by the court.
   b. *Grounds for removal.* The following are, among others, grounds for removal of a trustee: lack of capacity to administer the trust (see § 89); the commission of a serious breach of trust; refusal to give a bond, if a bond is required; refusal to account; the commission of a crime, particularly one involving dishonesty; unfitness, whether due to old age, habitual drunkenness, want of ability or other cause; permanent or long-continued absence from the State; the showing of favoritism to one or more beneficiaries; unreasonable or corrupt failure to co-operate with his co-trustees.
   c. *Friction.* Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust.

IC 30–4–1–7 states that the report of the trust code study commission may be consulted by the courts to determine the reasons, purpose and policies of Article 4.

Garland maintains the court could not remove him from the trusteeship unless it expressly found that he should be removed on one of the following grounds:

"Incapacity, serious breach of trust, refusal to give bond as required, refusal to account, commission of a crime, general unfitness, inattention to matters of administration, partiality between beneficiaries, unreasonable refusal to cooperate with the Co-Trustee."

These are grounds for removal listed in the Restatement Comment. However, they are not meant to be exclusive bases for removal. As the comment states "The following are, *among others*,[2] grounds for removal of a trustee: . . . ." (Emphasis added)

IC 30–4–3–29 does not establish statutory grounds for removal of a trustee; rather it states only that the court has such power. We find our Supreme Court's statement in *In re Kilgore* (1889), 120 Ind. 94, 22 N.E. 104 to still be the applicable law governing the facts in the present case.

"That a court of chancery has power, independently of any statutory provision or of any directions contained in the instrument, to remove a trustee, for good cause shown, is well established. *People v. Norton*, 9 N.Y. 176; 2 Pom.Eq.Jur. § 1086. The power of the court in that respect is as broad and comprehensive as the exigencies of any case may require. In exercising its jurisdiction the court does not, however, act arbitrarily, but upon certain well-defined principles, and after affording the trustee an opportunity to answer the charges made against him, and giving him ample opportunity to be heard. 2 Perry, Trusts, §§ 817, 818."

22 N.E. at 106. IC 30–4–3–29 is not a restriction on the power of a court of equity to act in trust matters. In fact, IC 30–4–3–30 states that:

"Effect of this article on the court's equity powers.—Except as otherwise provided in this article [30–4–1–1—30–4–6–13], the article shall not be construed to limit the general equity powers of the court over the administration of trusts. [IC 1971, 30–4–3–30, as added by Acts 1971, P.L. 416, § 4, p. 1910.]"

Further, the comment to § 107 of the *Restatement (Second) of Trusts* explains:

"a. *Removal by court.* A court may remove a trustee if his continuing to act as trustee would be detrimental to the interests of the beneficiary. The matter is one for the exercise of a reasonable discretion by the court."

d. *Insolvency.* If the trustee becomes bankrupt or insolvent, the court may remove him but will not necessarily do so; if the court does not remove him it may, in its discretion, require him to give security for the proper administration of the trust.

The effect of the failure of a trust company or bank upon the trusts which it is administering at the time of its failure depends upon local statutes and policies.

e. *Confirmation of appointment by court.* In some States a person named as trustee under a will cannot enter upon the performance of the trust until his appointment has been confirmed by the court. In such States the court will refuse to confirm the appointment if at the time there exist circumstances which would be sufficient grounds for his removal as trustee.

f. *Where trustee is named by the settlor.* The court will less readily remove a trustee named by the settlor than a trustee appointed by the court or by a third person who is by the terms of the trust authorized to appoint a trustee.

The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, although the court would not have appointed him trustee. Thus, the mere fact that the trustee named by the settlor is one of the beneficiaries of the trust is not a sufficient ground for his removal or for refusing to confirm his appointment as trustee, even though a large degree of discretion is by the terms of the trust conferred upon the trustee. In such a case, however, the conduct of the trustee in the administration of the trust will be subject to careful scrutiny; and if it appears to the court that because of his interest or otherwise he is unduly favoring himself and not fairly exercising the discretion conferred upon him, the court will remove him as trustee."

2. *See* n. 1.

From the evidence the trial court could reasonably have found that Garland's continuation as trustee would be detrimental to the interests of the beneficiaries. We reach this conclusion by looking at all the circumstances, particularly Garland's relationship with his two brothers Lee and Ivor, and his sister, Ursel. The record is replete with evidence demonstrating ill will among the children of Harold and Lottie. The record reveals an atmosphere of distrust and animosity among the children, which has led to extreme situations. We note as an example an incident testified to by Lee. He attempted to take his mother Lottie out for lunch when she was living in Garland's apartment in Fort Wayne. Garland's medical assistant prevented Lottie's departure by pulling on Lottie's arm while Lee pulled on Lottie in the other direction. Garland's assistant won this tug of war over Lottie by striking Lee in the face and pulling Lottie back into the apartment.

Further, we note that Garland is a remainderman of the trust assets along with Lee, Ivor and Ursel. If Garland remained as sole trustee the other children, particularly Lee and Ursel, have shown that they would not be satisfied and the precipitation of further legal proceedings against Garland could reasonably be expected, with litigation depleting the trust assets.

The comment to § 107 of the *Restatement (Second) of Trusts* notes:

"c. *Friction.* Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust."

The present case presents us with an analogous situation, where the friction exists between the co-trustees.

In *Bogert, Trusts and Trustees* § 527 (2nd Revised Ed.) we find that "where there are several trustees and the relations between them are such that they cannot co-operate in the affairs of the trust, *all* or one of them may be removed." (Emphasis added). The evidence clearly demonstrates that Garland and Lee could not cooperate when they shared the responsibility of being trustees. Actions of the other children have served only to exacerbate matters. Ivor at one point joined with Lee and Ursel in moving the court to have Garland removed as trustee. Ursel has instigated different suits against Lee and her parents, seeking to have them declared incompetent. The evidence indicates that none of the children would be satisfied with having one of their siblings serving as sole trustee and exercising discretion over substantial funds in which they have an expectancy as remaindermen of the trust. The evidence thus supports the trial court's finding 22, that the best interest of the trust would be served if Garland and Lee were removed from their offices as trustees. As to Garland's contention of error, the court's determination is bolstered by the court's additional findings that as trustee he commingled trust funds and failed to keep proper accounts. Clearly the court's decision did not constitute an abuse of discretion.

## II. Removal as Guardian

Garland next argues that his removal as co-guardian was not supported by sufficient evidence and was contrary to law. Garland asserts that his removal was erroneous because the court failed to specifically find that Garland had fallen within the delineated causes for removal found within IC 29–1–10–6. We hold that the findings and the evidence reveal that Garland was "unsuitable" to continue as a guardian of his parents and that his removal was proper. IC 29–1–18–25 provides that "a guardian of the person or of the estate may also be removed on the same grounds and in the same manner as is provided in section 1006 [IC 29–1–10–6] hereof for the removal of a personal representative." Under IC 29–1–10–6 a personal representative may be removed:

"When the personal representative becomes mentally incompetent, disqualified, unsuitable or incapable of discharging his duties, has mismanaged the estate, failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be domiciled in the state of

Indiana, the court may remove him as hereinafter provided:

(a) The court on its own motion may, or on petition of any person interested in the estate, shall order the representative to appear and show cause why he should not be removed. Such order shall set forth in substance the alleged grounds upon which such removal is based; the time and place of the hearing; and may be served upon the personal representative in the same manner as a notice is served pursuant to the provisions of the [Probate] Code.

(b) The court may without motion, petition or application, for any such cause, in cases of emergency, remove such personal representative instantly without notice or citation.

The removal of a personal representative after letters are duly issued to him does not invalidate his official acts performed prior to removal."

IC 29–1–10–6 states that a personal representative (i.e., a guardian under IC 29–1–18–25) may be removed if the court finds the personal representative is "unsuitable or incapable of discharging his duties, . . . ." Thus the question: What circumstances must be present to support a finding of "unsuitability?"

■ The Probate Code does not define "unsuitability" but in an analogous case, *Matter of Estate of Baird* (1980), Ind.App., 408 N.E.2d 1323, we considered when a personal representative, an executor, could be removed on the basis that he was unsuitable.

"Jurisdictions with similar statutes have defined suitability to describe a person who is considered to have the capacity and the will to discharge the duties in the particular case with fidelity and efficiency. *Grossman v. Grossman* (1962), 343 Mass. 565, 179 N.E.2d 900."

408 N.E.2d at 1327. Thus a guardian must act with fidelity and be able to carry out the duties of his office efficiently.

In *Baird* we noted that:

"The Massachusetts Supreme Court described unsuitability as 'not [being] restricted to instances of absolute unfitness but [as] including an unfitness arising out of the situation of the person in connection with the estate.' *Comstock v. Bowles* (1936), 295 Mass. 250, 260, 3 N.E.2d 817, 822–23. (Citations omitted.) Unsuitableness of one to act as a fiduciary may exist although actual misconduct or dereliction of duty is not shown. *Id., Quincy Trust Co. v. Taylor* (1944), 317 Mass. 195, 57 N.E.2d 573. *See generally* Annot., 18 A.L.R.2d 633 (1951)."

408 N.E.2d at 1327–28.

Thus we review the trial court's findings and the evidence to ascertain from the record as a whole whether Garland was unsuitable to continue as a guardian of his parents.

■ The court found that Garland was commingling guardianship funds with his own personal funds. Social Security benefits and Indiana Teachers' Retirement funds belonging to Harold and Lottie were deposited in a checking account held in four names: Garland, Diantha (Garland's wife), Harold, and Lottie. Accordingly, a non-guardian, Diantha, had full access to guardianship funds. Instead of using this account exclusively for the transfer of Harold's and Lottie's personal retirement income into the trust, Garland did not differentiate this account from his own. The evidence shows that the balance in the account vacillated, at one point being in excess of $30,000. The checks drawn were printed in the names of Garland and Diantha. The account was not considered a guardianship account by the bank, although it could have been established as a guardianship account.

While no showing exists that Garland was guilty of converting any of the guardianship funds for his personal use, the fact that the funds were commingled makes an accounting difficult and constitutes a breach of trust. Certainly, this manner of manipulating funds is not how a guardian should handle the assets of his wards.

The court also found that Garland was isolating and sequestering his parents from social contact with friends and family members to a degree "tantamount to imprisonment." Garland asserts that his strict regulation of who could see his parents was necessary for their medical welfare.

The fact that Harold and Lottie were infirm and needed to be protected is well established. However, we agree with the trial court that upon the facts of this case the guardian of the persons of Harold and Lottie needed to be an impartial outsider who was not entangled in the various family altercations which accompany the interactions of the Brown family. The removal of Garland from the guardianship was within the discretion of the trial court which presided over the hearing and which had a first-hand perspective over the facts. We find no abuse of discretion by the trial court.

In Issue No. 3 Garland argues that findings 16, 17, first finding 19, second finding 19, 20 and 21 are not supported by the evidence and are contrary to law. Garland urges us to consider the propriety of these findings individually. We decline to do so because the evidence supports the conclusion that Garland was unsuitable to continue as guardian and that his continuation as trustee would have been detrimental to the interests of the trust income beneficiaries, Harold and Lottie. Regardless of whether any of the above findings were in error, the evidence as a whole confirms the trial court's exercise of its discretion in removing Garland from his offices as co-trustee and co-guardian.

### III.  Successor Appointments

Garland's issues No. 4 and No. 5 are interrelated and will be considered together. In issue No. 4 Garland contends that the trial court's order on August 6, 1980 was erroneous. In that order, the trial court made two appointments to fill the vacancies created when Fort Wayne National Bank declined to serve as the trustee and the guardian for Harold and Lottie. The court appointed Lincoln National to serve as trustee and as guardian of the estates of Harold and Lottie. The court, cognizant of the physical infirmities of Harold and Lottie, appointed an individual, Donald Doxsee, a member of the local bar, to serve as guardian of the persons of Harold and Lottie.

Garland asserts that the vacancies were filled on August 1 when the "Appointment of Trustee" and "Selection of Guardian" were filed with the court. These statements, signed by Harold and Lottie, requested that Garland be appointed as sole trustee and sole guardian. Garland's argument is that (1) his parents utilized a trust provision empowering them as settlors to fill trustee vacancies; (2) court approval of his second appointment was not required; (3) he was instated as trustee as of August 1; and (4) the court's appointment of Lincoln National and Donald Doxsee constituted a sua sponte and ex parte nullification of the settlors' appointment of him to be sole trustee and was thus in error.

As to the guardianship, Garland asserts that a court exercising "due regard" for the ward's wishes as the statute requires could reach only one conclusion: that Garland as a son and physician was the person most suitable to serve as the guardian of the persons of his infirm parents.

Concomitantly, Garland argues in issue No. 5 that the court did not exercise "due regard" under IC 29–1–18–10 in the appointment of Lincoln National and Donald Doxsee as guardian of the estates and persons of Harold and Lottie. He contends that a financial institution and a stranger are not suitable guardians for elderly persons who are infirm in health.

■ Before we consider the merits of Garland's argument on these issues, a procedural problem must be considered. Garland raises these contentions in his second motion to correct errors, which was not ruled upon by the trial court. The appellee Lee asserts that because the trial court has not entered a ruling on the second motion, the appeal of these issues is premature and should be dismissed.

Although there is some merit in the argument, we find that we should proceed to decide the issue rather than hold further consideration in abeyance pending a ruling by the trial court as we might do pursuant to Appellate Rule 4(E).

At the time the court ruled upon the principal motion to correct errors it had before it Garland's petitions for his appointment as sole trustee and guardian pursuant to a nomination by his parents. In fact the court ruled upon these petitions as part of the entry made in denying the motion to correct errors. From the petitions and appellate argument it appears that the purposes of *P–M Gas & Wash Co., Inc. v. Smith* (1978), 268 Ind. 297, 375 N.E.2d 592 and *Breeze v. Breeze* (1981), Ind., 421 N.E.2d 647 have been substantially met. Therefore, pursuant to AP 15(E) we elect to treat Garland's second motion to correct errors as having been denied and reach the merits raised.

■ If the trust instrument prescribes a procedure dealing with a vacancy in trustees, the court should generally defer to this procedure and follow the desires of the settlors absent a showing that to do so would frustrate the purposes of the trust or be detrimental to the interests of the beneficiaries.

In this case, however, the settlors Harold and Lottie have been adjudicated incompetent. In July 1979 Garland and Lee were appointed guardians of the estates and persons of Harold and Lottie. Under IC 29–1–18–18, before appointing a guardian, the court must be satisfied that the prospective ward is incompetent. Further, IC 29–1–18–1 states:

"(c) An 'incompetent' or 'disabled person' is a person who is:

\* \* \* \* \* \*

(2) incapable by reason of insanity, mental illness, mental retardation, senility, habitual drunkenness, excessive use of drugs, old age, infirmity, disappearance, or other incapacity, of either managing his property or caring for himself or both;"

■ Therefore, the appointment of guardians for both the estates and persons of Harold and Lottie leads to the conclusion that a court in the initial guardianship proceeding determined that the parents were incapable of caring for themselves or their property. They were therefore presumptively incompetent. *See* IC 30–4–2–10. The trial court in the present action was not bound by the requests or appointments purportedly made by the settlors.[3] In an earlier proceeding the settlors were found to be incompetent and in need of a guardian to handle their affairs. Thus the issue of who should administer the trust was properly decided by the court under IC 30–4–3–29(c).[4]

■ Further, since Garland was properly removed as co-trustee he was no longer qualified to serve as an officer of the trust, especially as sole trustee. Because a qualified trustee had not been named by a settlor who was competent to do so, the court was empowered under IC 30–4–3–29(c) to appoint a new trustee.

Garland also asserts that the court did not exercise "due regard" in appointing Lincoln National and Donald Doxsee as guardians. IC 29–1–18–10 states:

"(a) The court shall appoint as guardian or co-guardian of an incompetent the person, persons or corporate fiduciary or any combination thereof most suitable and willing to serve, having due regard to:

3. The court initially appointed the Fort Wayne National Bank as successor trustee. This appointment was in accord with Article XVI of the Trust Agreement. As discussed, *ante*, the bank declined to accept the appointment.

4. IC 30–4–3–29 provides:

"(c) Unless a successor trustee is named in or selected according to a method prescribed in the terms of the trust, the court may appoint a trustee to replace a removed, resigned, or deceased trustee and, on petition by a party to the trust, may appoint a co-trustee if to do so would facilitate more effective administration of the trust.

(d) For good cause shown, the court may at any time appoint a temporary trustee for such period of time, and to perform such duties, as the court may direct."

(1) any request made by one for whom a guardian is being appointed by reason of old age, infirmity, or other incapacity, other than insanity, mental illness, mental retardation, senility, habitual drunkenness, or excessive use of drugs;

(2) any request for the appointment contained in a will or other written instrument;

(3) any request made by a minor of the age of fourteen (14) years or over for the appointment of his guardian;

(4) any request for the appointment made by the spouse of an incompetent;

(5) the relationship by blood or marriage to the person for whom guardianship is sought;

(6) the assets or interests of the incompetent and the incompetent's estate."

Garland argues that a consideration of these enumerated factors demonstrates that he alone is most suitable to serve as guardian of the estates and persons of his parents. He emphasizes that he is a physician and that his parents require constant medical attention. Also, the parents did request that Garland serve as sole guardian.

Nevertheless, the appointment of a guardian is within the discretion of the trial court, which must have the ultimate regard for the best interests of the incompetents. While Garland is a blood relative, and was requested by the parents, the trial court reasonably concluded that the best interests of the parents would be served by appointing an impartial institution as guardian of the estate and an impartial individual who was not caught up in the family altercations as guardian of the persons of Harold and Lottie. Given the rivalry and animosity shown in the record among the children, no abuse of discretion appears in the court's action.

Garland also contends that he is entitled to reimbursement for the attorney fees which he expended in seeking the removal of Lee, and which he incurred in defending his own offices against Lee's cross-petition to have Garland removed. Lee also argues

that he is entitled to reimbursement for attorney fees. Both of their arguments raise the same basic issues. We choose to defer a discussion on attorney fees until we have considered the merits of the other issues raised by Lee.

#### IV. Removal of Other Guardian

Lee first argues that the court abused its discretion in removing him as a co-guardian of Harold and Lottie.

After the guardianship was established Lottie remained with Lee until January 1, 1980. As noted earlier, Lottie required a special diet and daily monitoring of her pulse and blood pressure. The evidence is conflicting as to whether Lee was diligent in providing Lottie with the proper diet and in maintaining the medication schedule. Lee asserts that he followed Garland's instructions on diet and medication. Garland counters that when Lottie lived with Lee, her health deteriorated because Lee failed to adhere to the medication schedule and to her special diet, and failed to provide her with a peaceful, restful living environment. The evidence is also in conflict as to how Lee handled an incident where his mother was in severe pain because of a strangulated hernia. Lee asserts that he took prompt measures to relieve his mother's pain. Other evidence shows that Lee did not take appropriate action for several hours, after which he called Garland early in the morning. Thus various allegations of neglect and bad judgment have been asserted against Lee by Garland. Lee has taken exception to these allegations.

The trial court has the task of determining the credibility of witnesses where the evidence conflicts, and the trial court found that Lee's inability and failure to attend to the properly prescribed medical attention and diets of his parents rendered Lee disqualified, unsuitable and incapable of serving as co-guardian. In light of our discussion above considering when a personal representative is unsuitable to serve, and after a review of the evidence, we conclude that the trial court acted within its discre-

tion when it found that Lee was unsuitable to continue as guardian under the circumstances of the present case.

Lee also asserts his removal as guardian was in error because it was based upon medical records of a mental illness which he suffered 27 years before. Lee argues that the medical record was "illegal evidence, improperly admitted . . . ." and was prejudicial because it was the only document establishing his unsuitability. We disagree with Lee's contention that only the medical record supported his removal. The transcript was replete with conflicting testimony, portions of which support Lee's contentions, and portions of which support Garland's contentions. The trial court had ample evidence, other than the records, upon which to make a determination as to Lee's unsuitability to remain as a co-guardian. The evidence as a whole supports the court's removal of Lee and Lee has failed to show how he was prejudiced by the admission of the medical records which were 27 years old.

Next Lee complains that the trial court erred in finding that Lee was indebted to the trust in the amount of $3000. He contends that this finding was beyond the issues raised by the pleadings and that the evidence was insufficient to establish any indebtedness to the trust. Initially, we note that while the trial court made a finding of this indebtedness, no corresponding adjudication was expressed in the judgment.

We bypass the question of whether this "debt" was properly put in issue pursuant to TR 15(B) because we agree with Lee's other contention.

■ Evidence concerning this alleged debt was objected to as beyond the issues when the subject first came up during the direct examination of Garland. Some details were elicited; however, on cross examination and redirect. Viewing the evidence from the perspective favorable to the judgment, the most that could be inferred from

the evidence was that Lee was indebted to his father in this amount upon a transaction which occurred several years prior to the creation of the trust. There was no evidence to establish this debt ever became an asset of the trust. We therefore are forced to conclude the finding was not sustained by the evidence. Pursuant to AP 15(E) we therefore vacate finding No. 14.

### V. Attorney Fees

Lastly, we consider whether the court erred in not ordering the trust to reimburse Garland and Lee for the attorney fees they incurred while pursuing this litigation. Each party contends that while he was entitled to attorney's fees the other was not. In its findings and conclusions the court determined that the guardianship and trust estates should be charged with the costs of depositions and the other legal expenses incurred except that the parties should not recover attorney's fees.

The trust instrument provided that if any beneficiary contested the validity of the trust or any of its provisions then the "costs, expenses and attorneys fees incurred by the Settlors and/or Trustees in defending the validity of this Trust shall be deducted from the benefits provided for such beneficiary . . . ."

IC 30–4–3–22(e) states that if a beneficiary[5] of a trust successfully maintains an action to remove a trustee for cause he is "entitled to a judgment for reasonable attorney's fees."

■ Of course, the trustee is generally entitled to charge the trust with reasonable attorney fees incurred defending the trust, *First National Bank of Mishawaka v. Kamm* (1972), 152 Ind.App. 353, 283 N.E.2d 563, although such charges may be imposed upon the trustee personally where he is determined to be in breach of his obligations to the trust. *Haas v. Wishmier's Estate* (1934), 99 Ind.App. 31, 190 N.E. 548.

The crux of the question before us now is whether it was proper for the court to deny

---

**5.** IC 30–4–1–2(2) defines beneficiary as "any 'cestui que trust' or person named or a member of the class designated in the terms of the trust to be any person or class of persons for whose benefit the title to the trust properly is held and for whom the trust is to be administered[.]"

an award of attorney's fees to either party when the court ultimately, and properly, removed both for cause.

What the parties ignore in their arguments to this court is the equitable discretion afforded to trial courts concerning the matter of attorney fees. Trusts, of course, are an evolution of equity although largely governed by statute today. Thus, our trust code provides that, except as otherwise provided in the code article, the article shall not be construed to limit the general equity powers of the court over the administration of trust. IC 30–4–3–30.

Bogert is helpful in observing that:

"Where the trustee unsuccessfully resists a proceeding for his removal, he may be compelled to pay the costs personally. This may be the result regardless of the grounds upon which removal is decreed. It may be that he has not been at fault in any way, but has simply become incapable of acting further, as by reason of ill health. Nevertheless, if he resists the action he may be required to pay the costs. If he is unwilling to take the risk of paying costs, the proper course for him to take is to resign, in which case the costs are more likely to be charged to the trust estate."

*Bogert, Trusts and Trustees*, § 525, p. 248 (2nd Ed. 1978).

Considering the question of conflicts between co-trustees, our Supreme Court in approving the award of attorney's fees to both the "winning and losing" trustees has noted that the question should not be resolved solely upon the basis of which party succeeds at trial. Instead, all the circumstances should be considered by the trial court which is then invested with discretion to make or withhold an award. *Zaring v. Zaring* (1942), 219 Ind. 514, 39 N.E.2d 734. In *Forth v. Forth* (1980), Ind.App., 409 N.E.2d 1107 the court applied the discretionary rule of *Zaring* to sustain the denial of an award of attorney fees to a trustee who asserted her co-trustees breached their trust. The appellant contended that even though no breach of trust was found, she should recover attorney fees because her

actions were reasonable and taken in good faith. Without dwelling upon her bona fides the Court of Appeals affirmed since she had failed to establish that the trial court abused its discretion (by showing that the decision was clearly against the logic and effect of the circumstances). *Cf. Donahue v. Watson* (1980), Ind.App., 413 N.E.2d 974.

■ Under the circumstances before us the court concluded upon the evidence that both trustees should be removed. In addition, the nature of the proceedings was such as to render essentially inextricable each brother's attack on the other from his attempted defense of his own position. The brothers were beneficiaries of the trust with the remaining brother and sister as remaindermen and the foremost purpose of the trust at the time was to provide for the necessary care and well being of the settlors. There has been no showing that the court's action was clearly against the logic and effect of the circumstances. No abuse of discretion has been shown.

Accordingly, with the deletion of finding No. 14, the judgment is affirmed. Costs taxed one-half to Garland R. Brown and one-half to Lee Wendell Brown.

Modified and Affirmed.

HOFFMAN, P. J., and STATON, J., concur.