



FILED

Oct 08 2025, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Ricky D. Greene,

*Appellant/Respondent*

v.

Jeffrey Greene, as Co-Trustee of the Trusts Created Under Agreement by the Settlors Wilma Greene and Vyrell Greene,

*Appellee/Petitioner*

---

October 8, 2025

Court of Appeals Case No.
25A-TR-1141

Appeal from the Ripley Circuit Court

The Honorable Ryan J. King, Judge

Trial Court Cause No.
69C01-2309-TR-2

---

**Opinion by Judge Bradford**

Judges Weissmann and DeBoer concur.

**Bradford, Judge.**

# Case Summary

[1] Vyrell Greene ("Father") and Wilma Greene ("Mother") (collectively, "Parents") had three children together, Ricky, Jeffrey, and Mindy. During their lives, Parents established and revised a series of trusts (collectively, "the Trust"), whose primary asset was a 352-acre farm located in Ripley County ("the Farm"). Upon Mother's death in 2023, the Trust passed to Ricky and Jeffrey as co-trustees. Before long, a conflict arose between Ricky and Jeffrey, with Ricky wishing to liquidate the Farm and Jeffrey wishing to keep it in the Trust, and each petitioned to have the other removed as co-trustee.

[2] After additional filings and several hearings, the trial court (1) removed Ricky as a co-trustee of the Trust, (2) concluded that Ricky and Jeffrey should be responsible for their respective attorney's fees, (3) concluded that the Farm could not be liquidated pursuant to the provisions of the Trust, and (4) concluded that operation of the Indiana Prudent Investor Rule did not permit a sale of the Farm. Ricky challenges each of these rulings, but, because we find his arguments unpersuasive, we affirm.

## Facts and Procedural History

In 1997, Father and Mother each executed nearly identical versions of the Trust which held, as its primary asset, the Farm.[1] Father's and Mother's versions each made the other the successor trustee in the event of the death of the other. Father died in February of 2006, making Mother the successor trustee of the Trust. As amended and restated by Mother in October of 2013, the Trust provided, that, upon her death, it would be distributed to Jeffrey and Ricky as co-trustees and included the following provisions regarding disposition of the Farm:

> (1) The net annual income of the Farm Trust shall be distributed annually among Ricky D. Greene, Mindy Green Barbe and Jeffrey A. Greene for their respective lives. Upon the death of any of said beneficiaries, the share of income which would have been distributable to said decedent shall be distributed among the issue of the deceased beneficiary, *per stirpes* and not *per capita*.
>
> (2) The Farm Trust shall continue until the last to die of the children of Jeffrey A. Greene living December 22, 1997.
>
> (3) Upon the death of the last of the children of Jeffrey A. Greene, namely: Jeff A. Green, Jr., Cody D. Greene, and Seth E. Greene, the corpus and undistributed income shall be distributed in fee among the issue of Jeffrey A. Greene, *per stirpes* and not *per capita*.

Appellant's App. Vol. II p. 63.

---

[1] The first version of the Trust executed by Mother does not seem to appear in the record, but the parties agree it was, in fact, executed at around the same time as Father's.

[4] Mother died on February 19, 2023, making Ricky and Jeffrey co-trustees of the Trust. Meaningful communication between Jeffrey and Ricky had ceased in around 2010 or 2011, and a conflict arose regarding how to handle the Farm and the Trust, with Ricky taking the position that the Farm should be sold in order to maximize return to the beneficiaries and Jeffrey maintaining that the Trust provisions prohibited sale of the Farm before the death of the last of Jeffrey's children.

[5] On September 8, 2023, Jeffrey petitioned to docket the Trust and remove Ricky as co-trustee. On June 25, 2024, after mediation had failed, Ricky petitioned to remove Jeffrey as co-trustee and for permission to take action with regard to trust assets. The same day, Jeffrey petitioned for instructions on how co-trustees should proceed.

[6] On October 21, 2024, Ricky moved for partial summary judgment, asking the trial court, essentially, to conclude that there was no prohibition in the Trust of the sale of the Farm and that the Prudent Investor Rule ("the Act"), Indiana Code chapter 30-4-3.5, allowed for such a sale. The trial court held a hearing on Ricky's partial-summary-judgment motion on November 25, 2024. On January 8, 2025, the trial court concluded that Parents' intent had been that the Farm be maintained in the Trust until final distribution and that, while the Act applies to the Trust, it does not require the diversification of assets that would result from the sale of the Farm.

[7] On February 7, 2025, Ricky moved to dismiss Counts III (Decant the Trusts into a Single Trust) and V (Pay Retainer Fee of Counsel and Partially Distribute

Funds of Trusts) of his Petition to Act. On March 6, 2025, the trial court ordered, in relevant part, that Ricky and Jeffrey, not the Trust, pay their respective attorney fees.

[8] On April 4, 2025, a hearing was held on Ricky's and Jeffrey's petitions to remove the other as co-trustee. Jeffrey testified that he and Ricky could not communicate well enough to act as co-trustees, disagreed on the fundamental purpose of the Trust, and did not communicate by telephone or email. Jeffrey testified that Ricky had previously made threats, twice telling him in March of 2023 "that he was going to take everything that [he] had." Tr. Vol. II p. 119. Jeffrey had understood this as a threat that Ricky would make his life difficult and harm him financially. In the summer of 2024, Ricky and Jeffrey had met at a neutral location a few days after the failed mediation and Ricky had told Jeffrey that "if we did not work his way, he was going to burn everything down." Tr. Vol. II p. 119. Jeffrey had understood this to mean that Ricky "was planning on burning through as much of the, the, the capital or the Farm Trust that he could, the physical property and spend all the money in however way he could to make it no longer exist." Tr. Vol. II pp. 119–20. Jeffrey testified that he did not believe that Ricky had the best interests of the ultimate beneficiaries in mind.

[9] Jeffrey indicated his belief that the Trust was "pretty clear" that the Farm should remain in the Trust for the "use, benefit, [and] enjoyment of the beneficiaries" until it needed to be liquidated for the ultimate beneficiaries. Tr. Vol. II p. 121. Jeffrey's sons Seth and Jeffrey, Jr., both testified that they

wished Ricky to be removed, leaving Jeffrey to remain as trustee. Mindy testified to her belief that her parents had intended for the Farm to remain in the Trust and that Jeffrey should be the sole trustee. Ricky testified and, when asked if he was willing to comply with court orders on the administration of the Trust, replied, "I will have to evaluate that at the time." Tr. Vol. II p. 155. Ricky also testified that he disagreed with the trial court's previous ruling that it was Parents' intent that the Farm should remain in the Trust.

[10] On April 9, 2025, the trial court ordered Ricky to be removed as trustee, finding that

> (1) Ricky cannot effectively communicate with the other Trustee; (2) Ricky cannot effectively communicate with any of the other Beneficiaries; (3) Ricky will struggle with and likely fail to follow the lawful directives of the Court; (4) all other Beneficiaries present, to include Mindy Greene Barbe, Seth Greene, and Jeff[re]y Greene, Jr., testified that they support Jeff[re]y A. Greene remaining as Trustee and support Ricky's removal as Trustee; (5) no Beneficiaries appear to support Ricky remaining as Trustee nor do any of the other Beneficiaries concur in Ricky's interpretation of the Trust documents.

Appellant's App. Vol. II p. 28. The trial court appointed Seth as co-trustee. On April 30, 2025, Ricky moved to dismiss the remaining counts of his petition to act, which motion the trial court granted on May 5, 2025.

## Discussion and Decision

### I.    Removal of Ricky as Co-Trustee of the Trust

[11] Ricky contends that the trial court abused its discretion in ordering him removed as co-trustee of the Trust. Indiana Code section 30-4-3-29(a) provides

that "[a] trustee may be removed [… b]y the court." Moreover, "[a] beneficiary of a trust may maintain an action […] to remove a trustee for cause and to appoint a successor trustee[,]" Ind. Code § 30-4-3-22(a), which is what both Ricky and Jeffrey did here, with the trial court ultimately granting Jeffrey's petition.

[12] The removal of a trustee is within the sound discretion of the court and will not be reversed on appeal except upon the finding of a clear abuse of that discretion. *Matter of Guardianship of Brown*, 436 NE 2d 877, 884 (Ind. Ct. App. 1982). Of more particular interest to us at the moment, we have cited with approval the proposition that "[m]ere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee *unless such friction interferes with the proper administration of the trust*." *Id*. at 886 (citation and quotation marks omitted; emphasis added). "[W]here there are several trustees and the relations between them are such that they cannot co-operate in the affairs of the trust, all or one of them may be removed." *Id*. (citation and quotation marks omitted). It also seems to us that a trustee's relationship with the beneficiaries is another factor that the trial court may consider in deciding whether to remove a trustee. *See id*. at 880, 886 (considering, *inter alia*, existence of "ill will[,]" "atmosphere of distrust and animosity[,]" and "much strife and dissension" between four siblings, two of whom were the trustees of, and all of whom were beneficiaries of, a trust established by their parents).

[13] Under the circumstances, we have little trouble concluding that the trial court did not abuse its discretion in removing Ricky as co-trustee of the Trust. Jeffrey

testified that (1) he could not effectively communicate with Ricky about the Trust, (2) Ricky had threatened to harm him financially and deplete Trust assets, and (3) Ricky did not have the best interests of the ultimate beneficiaries in mind. For his part, Ricky testified that he disagreed with the trial court's previous ruling interpreting the Trust and seemed to indicate that he might not be willing to comply with future court orders on the matter. Finally, other than Ricky, every beneficiary whose opinion is on the record indicated disagreement with his interpretation of the Trust and expressed a desire to have him removed as co-trustee. Given the evidence of the conflict between the co-trustees, evidence casting doubt on Ricky's commitment to the best interests of the other beneficiaries, and weight of opinion regarding which one of the co-trustees should be removed, Ricky has failed to establish that the trial court abused its discretion in removing him as co-trustee of the Trust.

## II. Attorney's Fees

The Indiana Supreme Court has held that the award or denial of the reimbursement of attorney fees from a trust to a trustee is "in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order." *Malachowski v. Bank One,* 682 NE 2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring,* 219 Ind. 514, 523, 39 NE 2d 734, 737 (1942) (brackets in *Malachowski*)). The Court further noted that

> "a court passing on the question of allowances ought to consider not merely the result, but whether the trustees are acting reasonably and in good faith, whether the issue on which they are divided is of little or momentous consequence to the estate or its beneficiaries, whether the facts are undisputed or are so

controversial as to require an adversary proceeding for their determination, whether the legal questions are simple or complex, settled by precedents or open to serious debate, and any other matters that bear upon the reasonableness or the necessity for the litigation and the multiple employment of attorneys therein."

*Malachowski*, 682 NE 2d at 533 n.3 (quoting *Zaring*, 219 Ind. at 523, 39 NE 2d at 737).

[15] The rationale provided by the trial court in this case is as follows: "The Court finds that, given the amounts of funds each Trustee and/or Beneficiary receives or is set to receive, it would be unfair to permit the Trust(s) property as a Whole to be dissipated due to attorney expenses." Appellant's App. Vol. II p. 26. This rationale is adequate to support the trial court's order on attorney's fees. The conflict regarding the administration of the Trust seems to be largely limited to Ricky and Jeffrey, and, yet, if their fees were to be paid from the Trust, *all* beneficiaries would suffer. Moreover, to the extent that the trial court may have determined that Ricky and Jeffrey were both responsible for the fact that their difference of opinion led to litigation, it was entitled to do so. In short, the trial court's conclusion that the other beneficiaries should not have to pay for Ricky and Jeffrey's dispute strikes us as reasonable and is squarely within the discretion of the trial court. While our disposition of issues I and II likely resolves the current dispute, in the interest of avoiding potential future litigation, we choose to address the other contested issues in this case.

## III. Whether the Terms of the Trust Allow Sale of the Farm

[16] Ricky challenges the trial court's interpretation of the Trust, the provisions of which, he argues, allow for the sale of the Farm. The primary purpose of the

court in construing a trust instrument is to ascertain and give effect to the settlor's intention. Ind. Code § 30-4-1-3. The interpretation of a trust is a question of law for the court. *Univ. of S. Ind. Found. v. Baker*, 843 NE 2d 528, 531 (Ind. 2006). We apply the same rules of construction of a contract to determine whether the language in a trust is ambiguous. *Id.* When interpreting a trust, we "must read all of the [trust] provisions as a whole to accept an interpretation which harmonizes the contract's words and phrases and gives effect to the [settlors]' intentions as established at the time they entered into the [trust]." *Ryan v. Ryan*, 659 NE 2d 1088, 1092 (Ind. Ct. App. 1996), *trans. denied*.

[17] The Trust, in all versions, provides that, upon the death of the last of Jeffrey's children, the corpus and undistributed income is to be distributed "in fee" among Jeffrey's issue. Appellant's App. Vol. II pp. 44, 63. In this context, "fee" is shorthand for "fee simple," which is "[a]n interest *in land* that, being the broadest interest allowed by law, endures until the current holder dies without heirs; esp., a fee simple absolute. — Often shortened to *fee*." BLACK'S LAW DICTIONARY (11th ed. 2019) (first emphasis added). Because (1) Parents have required that the corpus of the Trust be distributed in fee upon dissolution and (2) *only* real estate may be distributed in fee, their clear intent was that the Farm remain in the Trust until dissolution. In other words, were the Farm to be

liquidated, and the proceeds used to purchase personal property such as stock, the Trust could not be distributed in fee, as Parents have specified.[2]

[18] Ricky does not specifically address the requirement that the Trust property be distributed in fee and is asking us to conclude that general terms in the Trust regarding trustee discretion and asset management override language indicating that Parents' intent was that the Farm remain in the Trust until its dissolution. It is well-settled that, "in reading the terms of a [trust] together, we keep in mind that the more specific terms control over any inconsistent general statements." *DLZ Ind., LLC v. Greene Cnty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009). Any general language regarding trustee discretion and asset management must be read as operating within the specific limitation that the Farm must remain Trust property until the Trust's dissolution.

## IV. The Act

[19] Ricky also argues that the Act applies to the Trust and seems to at least suggest that its operation might require sale of the Farm in favor of other, more lucrative assets. The Act requires that a trustee "shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms of the trust, distribution requirements, and other circumstances of the trust. In

---

[2] While the requirement that the Trust's corpus be distributed in fee is dispositive, Parents' intent is also demonstrated by the facts that the Trust provides that "(the Farm) shall be distributed in trust to Jeffrey A. Greene and Ricky D. Greene, as Co-Trustees, for the use, benefit, and enjoyment of the beneficiaries hereof[;]" contains no authorization for the sale of the Farm; and is described in many places as the "Farm Trust." Appellant's App. Vol. II pp. 43, 44.

satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Ind. Code § 30-4-3.5-2(a).

[20] As an initial matter, we have our doubts that the Act has any practical applicability to a trust whose corpus consists entirely of farmland. We have observed that "[t]he lion's share of the Prudent Investor Act contemplates a trust with an investment portfolio for which an overall investment strategy is needed." *Goodwine v. Goodwine*, 819 NE 2d 824, 831 (Ind. Ct. App. 2004). The *Goodwine* court further observed that "[t]here is little authority on the application of the Prudent Investor Act to trusts whose principal assets are something other than funds to be invested and managed, and we agree […] that the fit is not a comfortable one." *Id.*

[21] That said, we may, like the *Goodwine* court, safely leave that question for another day. Even if we assume that the Act could apply to a trust whose corpus is limited to farmland, it provides that it "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." Ind. Code § 30-4-3.5-1(b). As explained above, the Trust does just that, clearly providing that the Farm is to remain in the Trust until the death of Jeffrey's last child. We agree with the trial court that Ricky's attempt to use the Act in this fashion is "tantamount to rendering 'Farm Trusts' subordinate to the Act to the extent that would render such Trusts legal nullities." Appellant's App. Vol. II p. 23.

[22] We affirm the judgment of the trial court.

Weissmann, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

H. Curtis Johnson
DePrez, Johnson, Brant & Eads, P.A.
Shelbyville, Indiana


ATTORNEY FOR APPELLEE

William Joseph Jenner
Jenner, Pattison & Sharpe
Madison, Indiana